[Civ. No. 62552. Second Dist., Div. Five. Apr. 27, 1982.]

JOHN SERRANO, JR., et al., Plaintiffs and Appellants, v.
IVY BAKER PRIEST,* as State Treasurer, et al., Defendants
and Appellants.

---

*Although the former state Treasurer (now deceased) is not a party to this appeal,
we continue to use the title *Serrano* v. *Priest* for purposes of consistency and
convenience.

COUNSEL

Richard A. Rothschild, Sidney M. Wolinsky, Fred H. Altshuler and Altshuler & Berzon for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, Jeffrey I. Fuller and John J. Klee, Jr., Deputy Attorneys General, for Defendants and Appellants.

OPINION

**STEPHENS, Acting P. J.**—The present appeal—the fifth in this protracted proceeding—stems from the repeated efforts of plaintiffs' counsel to enforce a trial court judgment awarding them attorneys' fees. The trial court filed its initial order on August 1, 1975, directing the various state defendants to pay $400,000 each to Public Advocates, Inc. (Public Advocates) and the Western Center on Law and Poverty, Inc. (Western Center), counsel for plaintiffs and respondents throughout this landmark litigation. The attorneys' fee award followed plaintiffs' constitutional challenge to public school financing in this state. In *Serrano v. Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929] (*Serrano II*), the Supreme Court affirmed the Los Angeles County Superior Court judgment, entered on September 3, 1974, which held that the California public school financing system violated state constitutional provisions guaranteeing equal protection of the laws.

Defendants Unruh (then and presently the State Treasurer), Riles (then and presently the State Superintendent of Public Instruction), and Cory (then and presently the State Controller) appealed from the August 1975 order for attorneys' fees. In *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*), the Supreme Court affirmed the $800,000 fee award to Public Advocates and Western Center. The Supreme Court held that "the trial court acted within the proper limits of its inherent equitable powers" in awarding fees to plaintiffs' attorneys on the "private attorney general" theory. (*Id.*, at p. 47.) The majority opinion declared that the efforts of plaintiffs' attorneys in the *Serrano II* litigation protected rights grounded in the state Constitution to the benefit of a large number of people. (*Id.*, at pp. 46-47.) The Supreme Court concluded that the burden of presenting the successful constitutional claims qualified the $800,000 fee award under the equitable "private attorney general" doctrine. (*Id.*, at pp. 48-49.)[1]

---

[1]The Supreme Court affirmed the attorneys' fee award for the "school financing" litigation before the trial court's traditional equitable discretion was codified in Code of Civil Procedure section 1021.5. The *Serrano III* opinion was filed on October 4, 1977. Section 1021.5 was signed into law by the Governor on September 30, 1977. Pursuant to article IV, section 8 of the California Constitution, section 1021.5 became effective January 1, 1978.

The "private attorney general" doctrine, as enunciated in *Serrano III*, is essentially restated in Code of Civil Procedure section 1021.5, which provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right af-

The state defendants have not yet paid the amount due under the judgment despite the finality of the judicial ruling. After unsuccessful attempts to obtain voluntary payment of the August 1975 award, Public Advocates and Western Center moved the trial court for an order directing defendants to satisfy the earlier judgment.[2] On February 22, 1980, the trial court granted the motion and entered the order at issue in this appeal. The order, inter alia, directs the State Controller to pay $800,000 plus interest from funds appropriated by the Legislature for the "operating expenses and equipment" of the Department of Education, Superintendent of Public Instruction, and State Board of Education, "including the funds appropriated pursuant to Item 307(b) of the Budget Act of 1979 . . . ."[3] The trial court also ordered the state defendants to set aside sufficient funds from the 1979-1980 "operating

---

fecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

[2] John Serrano, Jr., is the named plaintiff in the underlying action. But the instant appeal addresses the efforts of Public Advocates and Western Center to apply the trial court's payment order for attorneys' fees against a line-item appropriation in successive budget acts. Since plaintiffs' counsel are the actual litigants in this appeal, Public Advocates and Western Center will be denominated as "respondents" herein.

[3] The dispositive text of the trial court's "ORDER DIRECTING COMPLIANCE WITH JUDGMENT" reads, in pertinent part:

"1. The Court adjudges and declares that funds appropriated by the Legislature for 'operating expenses and equipment' of the Department of Education, Superintendent of Public [Instruction], and State Board of Education, including the funds appropriated pursuant to Item 307(b) of the Budget Act of 1979, may properly be and should be spent for the payment of the attorney's fees awarded by this Court in this action.

"2. The Court adjudges and declares that funds appropriated by the Legislature for 'operating expenses and equipment' of the Department of Education, Superintendent of Public Instruction, and State Board of Education, including funds appropriated pursuant to Item 307(b) of the Budget Act of 1979, are funds 'appropriated for the support of the agency on whose behalf the State appeared' in this action, within the meaning of Code of Civil Procedure section 1028. The Court further and separately adjudges and declares that the attorney's fees awarded in the present action are 'costs' within the meaning of Code of Civil Procedure section 1028.

"3. The Court orders defendant Cory, and/or his successors in office, to draw warrants upon the State Treasurer in favor of Public Advocates, Inc. and the Western Center on Law and Poverty, Inc., each in the sum of $400,000.00 together with interest at the legal rate from August 1, 1975 to the date of said warrants, the payments under said warrants to be attributed for budgetary purposes to the 'operating expenses and equipment' budget of the State Department of Education.

"4. The Court orders defendant Unruh, and/or his successors in office, promptly

expenses and equipment" appropriation for the Department of Education to satisfy the August 1975 judgment with interest[4]

Defendants Riles and Cory appealed from the February 1980 order. On May 8, 1980, the Supreme Court stayed that portion of the trial court order requiring defendants to set aside funds for the satisfaction of the attorneys' fee award. Item 307(b) of the 1979-1980 Budget Act appropriated $51,717,921 for the "[o]perating expenses and equipment" of the Department of Education, Superintendent of Public Instruction, and State Board of Education. (Stats. 1979, ch. 259, § 2, item 307(b), p. 678.) Nearly all of those funds, however, were either disbursed or earmarked for the payment of departmental contracts by June 30, 1981.[5] With the Supreme Court's stay of the "set aside" order, the "unencumbered balance" currently remaining from item 307(b), if any, is clearly insufficient to satisfy the judgment herein.

---

upon receipt of the warrants referred to in Paragraph 3, to make payment thereof out of funds appropriated to the 'operating expenses and equipment' budget of the State Department of Education, or out of any other funds subject to the control of the State Treasurer.

"5. The Court orders defendant Riles, and/or his successors in office, to execute and issue all appropriate requisitions or other documents as are necessary to requisition the payment of the attorney's fee award specified herein."

[4]The relevant portion of the trial court's "ORDER PROHIBITING DISSIPATION OF FEE AWARD" states: "The Court finds that in order to prevent irreparable injury to plaintiffs' attorneys, to preserve the status quo, to avoid a multiplicity of litigation and to maintain a *res* presently within the Court's jurisdiction, it is necessary and appropriate that the following order be, and it is hereby, entered and issued:

"1. Pending the final disposition of this proceeding, or the payment of the attorney's fee award [at] issue herein, defendants and each of them, their successors in office, agents, servants and employees, and all persons acting in concert or participation with them, are hereby enjoined and restrained from directly or indirectly expending from the 1979-80 'operating expenses and equipment' budget of the Department of Education sums greater than that which would leave in said budget at the conclusion of the 1979-80 fiscal year an amount less than the attorney's fees awarded in this case, together with interest at the legal rate through June 30, [1980]. (Said amount is hereinafter referred to as the 'fee award sum.')

"2. Pending the final disposition of this proceeding, or the payment of the attorney's fee award at issue herein, defendants, and each of them, their successors in office, agents, servants and employees, and all persons acting in concert or participation with them, are hereby enjoined and restrained from directly or indirectly reverting the 'fee award sum' from the 'operating expenses and equipment' budget of the Department of Education to the general fund of the State of California and from otherwise dissipating said 'fee award sum' in a manner that would make it unavailable to satisfy this Court's August 1, 1975 judgment."

[5]Government Code section 16304 indicates that the "unexpended balance" in item 307(b) is the "unencumbered balance" in that appropriation. The Department of Edu-

On June 18, 1981, the Supreme Court filed its opinion in *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935]. The plaintiff in *Mandel* was an employee in the Department of Health Services. In an earlier lawsuit, she successfully challenged the constitutionality of the department's practice which afforded state employees "paid time off" on Good Friday. The trial court included in the judgment an attorneys' fee award of $25,000. After repeated efforts to obtain payment of this sum failed, plaintiff secured a trial court order directing the Controller to pay $25,000 plus interest from funds appropriated in the 1978-1979 Budget Act for the "operating expenses and equipment" of the Department of Health Services. (*Id.*, at pp. 537-539; see Stats. 1978, ch. 359, § 2, item 244(b), p. 817.) In affirming the payment order, the Supreme Court held that the department's "operating expense appropriation," as defined by the 1978-1979 Budget Act, was sufficiently broad to encompass court-awarded attorney fees. (*Mandel, supra*, at pp. 542-545.)

Shortly after the *Mandel* decision was rendered, Public Advocates and Western Center moved this court to dismiss defendants' appeal and summarily affirm the payment order at issue herein. The public interest law firms asserted that defendants' appeal was "wholly without merit" since *Mandel* established the propriety of applying the instant order against item 307(b) of the 1979-1980 Budget Act, as well as "subsequent operating expense appropriations." In their response to the preceding motion, the state defendants conceded that *Mandel* made the February 1980 order applicable against item 307(b). But defendants indicated the "unencumbered balance" in that support appropriation was insufficient to satisfy the attorneys' fee award. And defendants argued that *Mandel* did not resolve the issue of applying the February 1980 order to "operating expense appropriations" for the Department of Education in years subsequent to 1979-1980.

On August 13, 1981, this court approved a stipulation and order which disposed of respondents' motion to dismiss the present appeal. Pursuant to the parties' agreement, we summarily affirmed the trial court's order to the extent that it directed payment of the attorneys' fee award from the 1979-1980 "operating expenses and equipment" appropriation for the Department of Education. The "set aside" order stayed

cation's records reflect that as of June 30, 1981, only $118,395.40 remained unencumbered from the 1979-1980 support appropriation. The department either expended or earmarked the balance for various contract claims.

by the Supreme Court was vacated as moot.[6] In accordance with the August 1981 directive, only two issues remain for this court's resolution: (1) whether the February 1980 payment order was intended to apply to "operating expenses and equipment" appropriations for the Department of Education in budget years subsequent to 1979-1980; and (2) whether the payment order may properly be applied to the department's subsequent "operating expense appropriations" in light of restrictive provisions inserted in the 1980-1981 and 1981-1982 Budget Acts.

■ Public Advocates and Western Center contend that the language in the February 1980 order demonstrates the trial court's intent to apply the directive to budget years following 1979-1980. Respondents point to the first paragraph of the order directing payment of the attorneys' fee award from funds appropriated for the "operating expenses and equipment" of the Department of Education, "*including* the funds appropriated pursuant to [i]tem 307(b) of the Budget Act of 1979 . . . ." (*Ante*, fn. 3, italics added.) The public interest law firms also indicate that the paragraphs of the order addressed to the Controller and Treasurer are stated without restriction to a particular budget year. Conversely, respondents state that the "set aside" order expressly named the 1979-1980 "operating expense appropriation" merely to facilitate the collection of the judgment. (*Ante*, fn. 4.)

By its very terms, respondents argue that the payment order "includes" item 307(b), but is not limited to the 1979-1980 support appropriation. According to Public Advocates and Western Center, the variation in language between the payment order and "set aside" provision shows that where the trial court intended to limit its order to a particular budget year such intent was clearly stated. Respondents submitted the *Mandel* order as a reference for the trial judge in this case. (See *Mandel, supra*, 29 Cal.3d 531, 539, fn. 3.) While the *Mandel* order was expressly directed to a line-item appropriation in a single budget act, respondents assert that the lower court did not confine the

---

[6]Under the stipulation and order, the cross-appeal of Public Advocates and Western Center is dismissed, and this court need not determine the validity of that portion of the trial court's order directing the State Treasurer to pay the attorneys' fee award "out of any other funds subject to [his] control." (*Ante*, fn. 3.)

As a result of the holding in *Mandel, supra*, 29 Cal.3d 531, 545, the stipulation and order discussed above, and our conclusion herein, we need not determine whether court-awarded attorney fees should properly be considered an element of "costs" within the meaning of Code of Civil Procedure section 1028.

instant order to a particular budget year. Public Advocates and Western Center conclude that when the order was entered in this case, the trial court had "ample basis for presuming" that the Legislature would continue annual appropriations for the Department of Education's "operating expenses and equipment."

Article XVI, section 7 of the California Constitution provides: "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." Similarly, Government Code section 12440 states, in pertinent part: "[A] warrant shall not be drawn unless authorized by law, and unless unexhausted specific appropriations provided by law are available to meet it." The significance of these twin restraints is reflected by the appropriation measures which respondents seek to include within the February 1980 order. The Budget Act of 1979 appropriated funds for the fiscal year beginning July 1, 1979, and ending June 30, 1980. (Stats. 1979, ch. 259, § 2, p. 576.) The Budget Act of 1980 appropriated funds for the fiscal year beginning July 1, 1980, and ending June 30, 1981. (Stats. 1980, ch. 510, § 2, p. 1072.) The 1981 Budget Act currently allocates state revenues for the fiscal year of July 1, 1981, to June 30, 1982. (Stats. 1981, ch. 99, § 2, p. 2.)

As indicated by the foregoing chronology, only the Budget Act of 1979 was in effect when the trial court entered the payment order on February 22, 1980. The 1980 and 1981 Budget Acts were not even close to enactment at the time of the lower court's order. Notwithstanding any basis the trial judge had to "presume" subsequent "operating expense appropriations," the passage of the 1980 and 1981 budget bills were legislative acts which the lower court could not command. (*Mandel, supra*, 29 Cal.3d 531, 539-540.) The attorneys' fee award was a final judgment against the state authorized by the "private attorney general" doctrine. But the trial court could order payment only from funds actually appropriated in item 307(b) of the 1979 Budget Act. (*Ibid.*; *Veterans of Foreign Wars* v. *State of California* (1974) 36 Cal. App.3d 688, 697 [111 Cal.Rptr. 750].)[7] Regardless of the trial judge's intent, the lower court could not order the payment of the judgment from funds not yet appropriated by the Legislature.

---

[7] In *Mandel, supra*, 29 Cal.3d 531, 551, footnote 9, the Supreme Court approved the longstanding principles articulated in *Myers* v. *English* (1858) 9 Cal. 341, 349, and *Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131, 135 [145 P. 1025], which declare that courts may neither compel the Legislature to enact an appropriation mea-

The constitutional, statutory, and judicial authorities discussed above placed the 1980 and 1981 Budget Acts beyond the scope of the trial court's payment order. This court, however, has a factual opportunity which was not available to the trial judge on February 22, 1980. We may examine the 1980-1981 and 1981-1982 appropriation measures, since enacted by the Legislature. Both budget bills appropriated funds for the "operating expenses and equipment" of the Department of Education, only the amounts varied.[8]

The Budget Act of 1978 stated that the "operating expenses and equipment" category of departmental budgets "shall include all expenditures for purchase of materials, supplies, equipment, services (other than services of state officers and employees), and all other proper expenses." (Stats. 1978, ch. 359, § 26, subd. (b), p. 1013.) The identical definition of "operating expenses and equipment" also appears in the 1979, 1980, and 1981 Budget Acts. (Stats. 1979, ch. 259, § 26, subd. (b), p. 850; Stats. 1980, ch. 510, § 26, subd. (b), p. 1369; Stats. 1981, ch. 99, § 26, subd. (b), p. 392.) In *Mandel, supra,* 29 Cal.3d 531, 543-544, the Supreme Court held that the concluding clause in the 1978 statutory definition, "all other proper expenses," made the general "catchall" appropriation available for the payment of court-awarded at-

---

sure nor order the payment of funds that have not been appropriated by the Legislature. The Supreme Court reiterated that the separation of powers doctrine precludes a court from ordering the Legislature "to pass a prescribed legislative act."

However, the *Mandel* court disapproved *Myers* and *Westinghouse* to the extent that they suggest the Legislature is not constrained by the separation of powers doctrine in adopting restrictions in an appropriations bill.

[8] Item 316(b) of the 1980-1981 Budget Act appropriated $60,202,800 for the "[o]perating expenses and equipment" of the Department of Education, Superintendent of Public Instruction, and State Board of Education. (Stats. 1980, ch. 510, § 2, item 316(b), pp. 1183-1184.) The 1981-1982 Budget Act appropriated only $7,169,742 for "[o]perating expenses and equipment" in "support of [the] Department of Education." (Stats. 1981, ch. 99, § 2, item 610-001-001(b), p. 276.)

A modified organizational code and additional line-items for certain support appropriations were implemented in the 1981 Budget Act. (Stats. 1981, ch. 99, § 1.50, subd. (b), p. 2.) In light of these changes, a procedural matter remains for the internal accounting of the State Controller's office. The Controller should delineate those funds which now appear under new line-items for "operating expenses and equipment," and were formerly grouped in the department's general support appropriation for "operating expenses and equipment." (See, e.g., Stats. 1981, ch. 99, § 2, items 610-001-001 through 610-001-955, provisions 1-16, pp. 276-283.) Although they now appear under new line-items, the funds previously categorized in the department's general "operating expense appropriation" may still be available for the satisfaction of the August 1975 judgment.

torney fees. Even if the 1979-1980 appropriation in item 307(b) has since been exhausted, the *Mandel* holding makes the 1980-1981 and 1981-1982 "operating expense appropriations" for the Department of Education available for payment of the attorneys' fee award herein. (Cf. *Baggett* v. *Dunn* (1886) 69 Cal. 75, 78 [10 P. 125].)

Since the 1980 and 1981 Budget Acts were enacted after the trial court entered its payment order, we will modify the February 1980 directive pursuant to Code of Civil Procedure section 43.[9] Considering the record before us, and the passage of the relevant appropriation measures by the Legislature, further proceedings and expense in the trial court should be avoided. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 738-739 [129 Cal.Rptr. 298, 548 P.2d 698]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 528, p. 4474.) We direct the State Controller to pay the August 1975 judgment plus interest from any unexpended, unencumbered funds in the "operating expenses and equipment" appropriations for the Department of Education in the 1979, 1980, and 1981 Budget Acts.

This court is reasonably certain that the "unencumbered" funds remaining from the aforementioned appropriations are sufficient to satisfy the attorneys' fee award. If the sums allocated in the 1979, 1980 and 1981 "operating expenses and equipment" appropriations are insufficient, however, the recurring problem of paying this judgment raises the specter of further appeal. To alleviate that possibility, our order against the Department of Education's "operating expense appropriations" may be aptly amended to accomplish satisfaction of the judgment.

▪ The California Legislature inserted section 4.5 in the 1980 Budget Act and section 4.50 in the 1981 Budget Act. (Stats. 1980, ch. 510, § 4.5, p. 1335; Stats. 1981, ch. 99, § 4.50, p. 372.) Section 4.5 is virtually identical to section 4.50, except the latter expressly provides that the section itself "shall not be construed" as appropriating funds for the payment of court-awarded attorney fees. Both sections prohibit the use of funds appropriated in the respective budget bills for the payment of court-awarded attorney fees, unless payment of such fees is either (1) specifically authorized and provided for in an item or section of the

---

[9]Code of Civil Procedure section 43 provides, in relevant part: "The Supreme Court, and the courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, ..."

Budget Act; or (2) expressly authorized by a statutory provision other than Code of Civil Procedure section 1021.5.[10]

Because section 1021.5 codified the equitable doctrine which authorized the judgment here (*ante,* fn. 1), appellants conclude that the attorneys' fee award cannot be paid from the "operating expense appropriations" in the 1980 and 1981 Budget Acts. To the contrary, appellants assert that sections 4.5 and 4.50 of the budget bills demonstrate that the Legislature has not appropriated funds in either the 1980-1981 or 1981-1982 fiscal years for the payment of attorneys' fee awards under Code of Civil Procedure section 1021.5 or the "private attorney general" doctrine. Riles and Cory contend that sections 4.5 and 4.50 do not readjudicate a particular claim, as the budgetary provisions preclude payment of any section 1021.5 or "private attorney general" fee award from a department's "operating expense appropriation." Appellants characterize this preclusion as "legislative inaction," which a court cannot remedy by commanding an appropriation.

The Legislature has broad authority to adopt "appropriate measures" to control governmental expenditures. (*Mandel, supra,* 29 Cal.3d 531, 550.) Not intending an exclusive enumeration, the *Mandel* court listed "a wide variety of legitimate means" by which the Legislature could restrict the potential costs of attorney fees. (29 Cal.3d at pp. 550-551.)[11] Appellants argue "a careful reading" of *Mandel* indicates that sections 4.5 and 4.50 are merely "control sections" within the Legislature's legitimate authority. Riles and Cory contend that the budgetary provisions are aimed at controlling expenditures under the 1980 and 1981 Budget Acts, and do not preclude the possibility of future payments for this "class of attorneys' fee awards."

---

[10]Section 4.5 of the 1980 Budget Act provides: "No funds appropriated by this act may be used to pay court-awarded attorney's fees unless payment of such fees is:

"(a) Specifically authorized and set forth in an item or section of this act; or

"(b) Expressly authorized by a statutory provision other than [s]ection 1021.5 of the Code of Civil Procedure."

Section 4.50 of the 1981 Budget Act states: "No funds appropriated by this act may be used to pay court-awarded attorney's fees unless payment of such fees is either:

"(a) Specifically authorized and set forth in an item or section of this act; or

"(b) Expressly authorized by a statutory provision other than [s]ection 1021.5 of the Code of Civil Procedure.

"Provided that this section shall not be construed as making an appropriation of funds for the payment of court-awarded attorney's fees."

[11]"Among other alternatives," the Supreme Court discussed the legislative options of establishing a maximum hourly rate of recovery or "per-case" limit on attorneys' fee awards, or appropriating a designated sum of money to an "attorney fee payment fund."

Appellants assert that the sections remove the need for the Legislature to estimate the number and dollar amount of such judgments in making support appropriations for state departments. Appellants reason that the Legislature could appropriate a fixed sum of money to satisfy "actual" judgments for attorneys' fees at the end of a fiscal year. Riles and Cory concede that sections 4.5. and 4.50 were inserted in the respective budget bills to change the "past administrative practice" of charging attorneys' fee awards against a department's general "operating expense appropriation." (*Mandel, supra*, 29 Cal.3d 531, 544.) Appellants state that the adoption of the restrictive provisions was designed to preclude "multiple court decisions" like *Mandel* and this case from disrupting departmental operating budgets.

While appellants' arguments are attractive, they are not persuasive in the context of the present appeal. The judgment for attorneys' fees in this case was entered nearly seven years ago. The Supreme Court affirmed the award, and the trial court ordered the payment of this final judgment more than two years ago. The Controller refused to draw warrants for the attorneys' fees against an appropriation of more than $51 million. Appellants inform this court that the 1979-1980 appropriation for the Department of Education's "operating expenses and equipment" cannot satisfy a judgment which now totals nearly $1.2 million. There is no need for the Legislature to estimate the dollar amount of the attorneys' fees here. Both the Legislature and appellants have watched this judgment grow for years.

This court does not deal with "legislative inaction" here. Contrary to appellants' arguments, we are faced with a legislative readjudication of a final court judgment. The judgment for attorneys' fees in this case was final years before the Legislature considered adoption of sections 4.5 and 4.50. The attempted change in the "past administrative practice" of charging attorneys' fee awards against a department's general "operating expense appropriation" does not affect the finality of the judgment herein. We do not quarrel with the Legislature's right to make a statutory amendment which prospectively changes the standards for payment of this type of attorneys' fee award. (*Mandel, supra*, 29 Cal.3d 531, 550-551.) We do, however, question the validity of sections 4.5 and 4.50 insofar as they attempt to readjudicate the August 1975 judgment.

The separation of powers doctrine in California is set forth in article III, section 3 of the state Constitution, which provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." The case at bar represents a "specific controversy" which was assigned to the judicial branch for resolution. (Cal. Const., art. VI, § 1.) And "the Legislature enjoys no constitutional prerogative to disregard the authority of final court judgments resolving specific controversies within the judiciary's domain." (*Mandel, supra,* 29 Cal.3d 531, 547.)

In spite of the separation of powers doctrine, the Legislature attempted to void the effect of the August 1975 judgment through sections 4.5 and 4.50. The provisions restricting payment of court-awarded attorney fees from appropriations in the 1980 and 1981 Budget Acts cannot ignore the binding nature of the attorneys' fee award herein. Insofar as sections 4.5 and 4.50 act to exclude the instant award from the relevant appropriations, the provisions are invalid restrictions resting upon a legislative readjudication of the merits in this final court judgment. (*Mandel, supra,* 29 Cal.3d 531, 550.) The "operating expenses and equipment" appropriations for the Department of Education in the 1980 and 1981 Budget Acts (*ante,* fn. 8) are available for the payment of this attorneys' fee award. (*Id.,* at pp. 541-542, 546.)

Although the trial court's payment order could only reach the 1979 Budget Act, we modify the directive to include the relevant appropriations in the 1980 and 1981 Budget Acts. In view of our holding, it is not necessary to discuss the parties' equal protection arguments or other contentions presented on appeal.

As modified the judgment is affirmed. Each party to bear its own costs.

Ashby, J., and Hastings, J., concurred.