[No. H001577. Sixth Dist. Feb. 27, 1987.]

Estate of JESSIE CIRONE, Deceased.
BENNIE J. CIRONE, as Co-executor, etc., et al., Petitioners and Respondents, v.
KENNETH CORY, as State Controller, Objector and Appellant.

COUNSEL

D. Robert Shuman and Peter A. Baldridge for Objector and Appellant.

Bertram M. Berns and Howard C. Anawalt for Petitioners and Respondents.

OPINION

**CAPACCIOLI, J.**—The pivotal issue in this case is whether a restriction in the 1985 Budget Act line-item appropriation for payment of attorney fee awards made pursuant to Code of Civil Procedure section 1021.5,[1] which limits expenditures to a maximum hourly rate of recovery, violates California Constitution's separation of powers doctrine (Cal. Const., art. III, § 3). We conclude it does not and reverse.

---

[1] All futher statutory references are to the Code of Civil Procedure unless otherwise indicated.

## I

## Procedural History

"[Jessie] Cirone died at about 2 p.m. on June 8, 1982. The inheritance tax referee appointed by the probate court reported that Cirone's estate owed a tax of $70,108. The executors of the estate objected on the ground that the passage of Proposition 6 on June 8, 1982, repealed the state inheritance tax from the beginning of that day. The court sustained the objection, and the state ... appealed." (*Estate of Cirone* (1984) 153 Cal.App.3d 199, 201 [200 Cal.Rptr. 511].) In a 1984 decision, an appellate court held that "... an initiative measure repealing the state inheritance tax, stating it is 'operative as of the date of passage' and 'shall apply to the estates of those persons dying on or after such date,' precludes the imposition of inheritance taxes against the estate of persons dying on the date of the election at which the initiative measure was enacted by the electorate." (*Ibid.*)

Upon remand, the executors of the estate of Jessie Cirone petitioned the superior court for an award of attorney's fees pursuant to section 1021.5, a codification of the judicial private attorney general fee doctrine (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 624, fn. 1 [186 Cal.Rptr. 754, 652 P.2d 985]).[2] The executors claimed to have incurred $11,956 for attorney services and costs, which sum was based upon an hourly charge of approximately $150.[3] They requested the court to award fees calculated by applying a multiplier of at least 2.5.[4]

---

[2] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary , has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

[3] It appears from the attorney's declaration that approximately 78 1/2 hours of attorney's services were expended in pursuing this action.

[4] To determine the amount of an attorney fee award under section 1021.5, a trial court must "... first determine a 'touchstone' or lodestar' figure based on a 'careful compilation of the time spent and reasonable hourly compensation for each attorney ... involved in the presentation of the case.' [Citations.]" (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322 [193 Cal.Rptr. 900, 667 P.2d 704].) "The ['touchstone' or 'lodestar'] figure may be enhanced or diminished after the court considers matters such as ... : '(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; [and] (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed....' [Citation.]" (*Serrano v. Unruh, supra,* 32 Cal.3d at pp. 625-626, fn. 6.)

By order dated August 21, 1984, the superior court awarded, and directed the state and State Controller to pay, $18,000 in attorney's fees directly to Bertram M. Berns, the attorney for the estate's executors. The court's memorandum of decision, dated August 15, 1984, explained that it arrived at the figure by ". . . taking the initial calculation of the attorney services in terms of the time expended on the case and arriving at a 'lodestar' amount of $12,000" and then using ". . . a multiplication factor of 1.5 on that 'lodestar' amount to arrive at the attorney fee award of $18,000." The State Controller unsuccessfully brought a new trial motion (§ 655 et seq.) to vacate the fee award, but no appeal was taken.

Apparently, the State Controller then informed Berns by letter that the Budget Act appropriation at that time limited expenditures for payment of attorney fee awards under section 1021.5 to a maximum hourly rate of recovery equivalent to the hourly rate charged by the State Attorney General's Office. (See Stats. 1984, ch. 258, § 2.00, item 9810-001-001, p. 642.) The Controller represented that rate to be $62.75. He stated: "On the basis of the declaration submitted in the Cirone matter, it appears that there were 78 hours of work involved, for a total fee of $4,894.50."

Having been so advised, respondents initially sought to collect the attorney fee award by presenting a claim for $18,000 to the State Board of Control. The board accepted the claim in full and requested monies to pay the award be appropriated from line-item 9810-001-001 of the current budget act by special omnibus bill. However, that collection effort failed when a legislative subcommittee deleted the proposed appropriation from the bill evidently because members felt the claim was adequately addressed by the budget act.

On September 23, 1985, respondents noticed a motion for an order compelling State Controller Kenneth Cory to pay the full amount of the attorney fee award from existing appropriations and awarding an additional sum for attorney's fees expended to enforce the attorney fee award.[5] The motion was argued and submitted on October 28, 1985.

By formal order dated December 3, 1985, the court ordered State Controller Kenneth Cory and the State of California to pay Berns ". . . the sum of eighteen thousand dollars ($18,000), together with interest from August 22, 1984 from the funds of the Office of the State Controller" and directed that the payment be made ". . . either from line number 9810-001-001 of the 1985-1986 budget of the State of California or from other appropriated funds." The court also ordered State Controller Kenneth

---

[5]Berns claimed the attorney services and costs connected with enforcing the attorney fee award totaled $2,944.

Cory and the State of California to pay Berns ". . . the further sum of $500.00 together with all actual costs incurred in bringing the petition" and directed that payment be made ". . . either from line number 9810-001-001 of the 1985-1986 budget of the State of California or from other appropriated funds."[6] State Controller Kenneth Cory appeals from that order.

## II

### Separation of Powers

The State Controller argues that compliance with the superior court's order ". . . would cause him to act in an unconstitutional manner since, in order to fully satisfy the award, he would be required to draw money from the State Treasury in excess of appropriations made by the State Legislature for such purpose." California Constitution, article XVI, section 7, provides: "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." Government Code section 12440 states in pertinent part: "The Controller shall draw warrants on the Treasurer for the payment of money directed by law to be paid out of the State Treasury; but a warrant shall not be drawn unless authorized by law, and unless . . . unexhausted specific appropriations provided by law are available to meet it."[7]

The Controller states that he is precluded from paying the full award from the 1985 Budget Act appropriations because of express statutory limitations on expenditures for payment of attorney fee judgments made pursuant to 1021.5 and he is ". . . unaware of any 'other appropriated funds' that may be available for payment of the award . . . ." He asserts that he is not challenging the validity of the principal fee award itself.

The Controller refers us first to section 5.00 of the 1985 Budget Act. Section 5.00 reads: "No funds appropriated by this act or appropriated under any other statute may be used to pay court-awarded attorney's fees unless payment of such fees is either: [¶] (a) Specifically authorized and set forth in an item or section of this act; or [¶] (b) Expressly authorized by a statutory provision other than Section 1021.5 of the Code of Civil Procedure. [¶]

---

[6]The 1985 Budget Act generally appropriates money for the use and support of the State of California for the 1985-1986 fiscal year beginning July 1, 1985, and ending June 30, 1986. (Stats. 1985, ch. 111, § 2.00, p. 343.) The record before us does not indicate whether or when the 1985 Budget Act appropriation for payment of attorney's fee awards made pursuant to section 1021.5 was exhausted.

[7]The issues in this case are being decided despite any technical mootness because they are of continuing public significance. (*Peterson* v. *City of San Diego* (1983) 34 Cal.3d 225, 227 [193 Cal.Rptr. 533, 666 P.2d 975]; *District Election Etc. Committee* v. *O'Connor* (1978) 78 Cal.App.3d 261, 265-266 [144 Cal.Rptr. 442].)

Provided that this section shall not be construed as making an appropriation of funds for the payment of court-awarded attorney's fees." (Stats. 1985, ch. 111, § 5.00.)

He next points to the 1985 Budget Act appropriation for payment of attorney fee judgments entered against the state pursuant to section 1021.5, namely line-item 9810-001-001. The appropriation contains restrictions upon expenditures from that item, including the limitation that payment not exceed a maximum hourly rate of $90.[8]

The Controller asserts that the superior court's order compelling him to pay the full $18,000 together with interest violates the separation of powers doctrine because it exceeds the legislative restriction limiting expenditures to a maximum hourly rate of recovery. Respondents counter that the legislative restriction violates separation of powers doctrine because it requires the Controller to look behind the final fee award and to determine the maximum amount to be paid based upon the specific facts of the particular case.

■ The separation of powers doctrine establishes that none of the coordinate branches of our tripartite government may exercise power vested in another branch. Article III, section 3, of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."[9]

---

[8]Line-item 9810-001-001 of the 1985 Budget Act designates $200,000 for ". . . payment of attorney fee claims, settlements, compromises, and judgments against the state, its officers, and officers and employees of state agencies, departments, boards, bureaus or commissions, supported from the General Fund, but only pursuant to the provisions of Code of Civil Procedure Section 1021.5, the 'private attorney general' doctrine, or the 'substantial benefit' doctrine." (Stats. 1985, ch. 111, § 2.00.) Expenditures are subject to the following provisions: "1. Expenditures from this item shall be made by the Controller, subject to the approval of the Department of Finance, and shall be charged to the fiscal year in which the disbursement is issued. [¶] 2. Expenditures from this item shall not exceed a maximum hourly rate of $90. [¶] 3. Notwithstanding the maximum hourly rate specified above, no expenditure from this item shall be made in excess of $100,000 for a single action. [¶] 4. No payment shall be made by the Controller from this item except in full and final satisfaction of the claim, settlement, compromise, or judgment for attorney fees incurred in connection with a single action. [¶] 5. The Director of Finance shall notify the Chairperson of the Joint Legislative Budget Committee and the chairperson of the fiscal committees in each house when funds from this item have been exhausted, or when there are insufficient funds to satisfy a claim completely. This report shall list the known unsatisfied claims, and the amount of each of these claims."

[9]Article IV, section 1, states: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." Article V, section 1, establishes: "The supreme executive power of this State is vested in the Governor. . . ." Article VI, section 1, provides: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. . . ."

The Legislature is clearly the branch empowered to enact statutes, including passage of an annual budget bill. (Cal. Const., art. IV, §§ 8, 10, 12.) The judiciary is assigned the resolution of specific controversies. (Cal. Const., art. VI, § 1; *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 547 [174 Cal.Rptr. 841, 629 P.2d 935].)

■ It has long been established that the judicial branch has no power to compel the Legislature to pass particular appropriations. (*Mandel* v. *Myers, supra,* 29 Cal.3d at pp. 539-540; *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 751 [135 Cal.Rptr. 345, 557 P.2d 929]; see *Mezey* v. *State of California* (1984) 161 Cal.App.3d 1060, 1065 [208 Cal.Rptr. 40].) "[I]t is equally well established that once funds have already been appropriated by legislative action, a court transgresses no constitutional principle when it orders the State Controller or other similar official to make appropriate expenditures from such funds." (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 540.)

In 1858, our Supreme Court affirmed a lower court which refused to issue a writ of mandate compelling the State Treasurer to pay warrants drawn by the State Controller to discharge the state's indebtedness for judges' salaries where the Legislature failed to appropriate funds for that purpose. (*Myers* v. *English* (1858) 9 Cal. 341, 346, 352 [174 Cal.Rptr. 841, 629 P.2d 935], disapproved in part, *Mandel* v. *Myers, supra,* 29 Cal.3d at p. 551, fn. 9.) The court stated: "We think the power to collect and appropriate the revenue of the State is one peculiarly within the discretion of the Legislature. It is a very delicate and responsible trust, and if not used properly by the Legislature at one session, the people will be certain to send to the next more discreet and faithful servants. [¶] It is within the legitimate power of the judiciary, to declare the *action* of the Legislature unconstititional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of *non-action.* The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. . . ." (*Id.* at p. 349.)

In 1915, our Supreme Court denied a writ petition to compel the State Controller to issue a warrant to satisfy a final judgment against the state for taxes unlawfully collected. (*Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131, 135, 143 [145 P. 1025], disapproved in part, *Mandel* v. *Myers, supra,* 29 Cal.3d at p.551, fn. 9.) The court stated: "This judgment has become final. With its merits we have nothing to do, our concern in this proceeding being wholly upon the question of the mode of obtaining payment from the state. [¶] The general rule is well established that a judgment against the state, in cases wherein the state has permitted actions to be maintained against it, merely liquidates and establishes the claim against the state, and that, in the absence of an express statute so providing, such

judgment cannot be collected by execution against the state or its property, or by any of the ordinary processes of law provided for the enforcement of judgments; it remains for the state, after such judgment, to provide for the payment thereof in such manner as it sees fit, or to refuse to do so at its pleasure, and the judgment creditor can obtain payment in no other way than that provided. [Citations.]" (*Id.* at p. 135.)

These two cases remained unquestioned until *Mandel* v. *Myers* disapproved them to the extent that their language could be read ". . . to suggest that the Legislature is not constrained by the separation of powers doctrine in exercising its appropriations power . . . ." (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 551, fn. 9.) The Supreme Court in *Mandel* explained its earlier opinions: "[They] declare that the courts may not compel the Legislature to enact an appropriation measure and may not compel payment in the absence of any available appropriated funds. Properly interpreted, such decisions hold simply that by virtue of the separation of powers doctrine courts lack the power to order the Legislature to pass a prescribed legislative act. . . . [H]owever, those cases do not stand for the proposition that the Legislature may arrogate to itself functions which it may not constitutionally exercise simply by adopting restrictions in an appropriations bill." (*Ibid.*)

In *Mandel* v. *Myers, supra,* 29 Cal.3d 531, the plaintiff successfully obtained, and defended against appellate attack, an attorney fee award of $25,000 made pursuant to section 1021.5. (*Id.* at p. 535.) The plaintiff's initial efforts to obtain satisfaction of the award failed. (*Id.* at pp. 537-538.) Eventually, the plaintiff moved for an order compelling the State Controller to satisfy the award from the line-item appropriation in the 1978-1979 budget for payment of the operating expenses and equipment of the State Department of Health Services. (*Ibid.*) The motion was granted and the defendant State agencies and officers appealed. (*Ibid.*)

The defendants argued that the Legislature did not intend that line-item appropriation to be generally available for payment of attorney fee awards and, even assuming that it did, the Legislature impliedly did not intend for that item to be available for payment of the plaintiff's award since a legislative committee had deleted a specific line-item appropriation proposed to satisfy the award. (*Id.* at p. 536.)

Our Supreme Court first declared that ". . . judicial authorities establish that when . . . a restriction in an appropriation measure is found invalid, a judicial decision requiring the payment of funds without regard to the improper restriction does not violate the separation of powers doctrine." (*Id.* at p. 541.) The court determined that it followed that "[i]f, in the absence of such invalid restriction, appropriated funds are reasonably available for the expenditures in question, the separation of powers doctrine poses no

barrier to a judicial order directing the payment of such funds." (*Id.* at p. 542.)

The court next addressed whether the general appropriation made in the 1978-1979 Budget Act to the Department of Health Services for its operating expenses and equipment was available for payment of the attorney's fee award. (*Id.* at p. 542.) That budget act defined "operating expenses and equipment" to include, among other things, "services (other than services of state officers and employees)" and "all other proper expenses." (*Id.* at p. 543; Stats. 1978, ch. 359, § 26, subd. (b), p. 1013.) The court concluded the department's 1978 operating expense appropriation was generally available for payment of court-awarded attorney fees. (*Id.* at pp. 543-545.)

Finally, the Supreme Court considered whether the operating expenses and equipment appropriation was available to pay the plaintiff's award in view of the budget act's provision that " '[n]o appropriation made by this act . . . may be . . . used in any manner . . . to achieve any purpose which has been denied by any formal action of the Legislature,' "[10] and the legislative deletion of the proposed specific line-item appropriation. (*Id.* at p. 545.) The court observed that ". . . the discussion in the Legislative Analyst's report recommending the deletion of the proposed appropriation strongly suggests that the action of the legislative committee in question may well have been based simply upon the committee's own reassessment of the validity of plaintiff's underlying attorney fee claim." (*Id.* at p. 546.)

The court posed the question whether ". . . the Legislature may properly disregard the finality of a court judgment and take it upon itself to readjudicate on a case-by-case basis the merits of such a judgment." (*Ibid.*) It resolved: "We think that it is clear that the fundamental separation of powers doctrine embodied in article III, section 3 of the California Constitution . . . forbids any such legislative usurpation of traditional judicial authority. Our Constitution assigns the resolution of such specific controversies to the judicial branch of government . . . and provides the Legislature with no authority to set itself above the judiciary by discarding the outcome or readjudicating the merits of particular judicial proceedings." (*Id.* at p. 547.)

It further stated: "[W]hile the Legislature enjoys very broad governmental power under our constitutional framework, it does not possess the authority to review or readjudicate final court judgments on a case-by-case basis. The recognition of such legislative authority would completely deprive court

---

[10]Government Code section 13332.15 now states: "No appropriation may be combined or used in any manner to avoid budgeting the salary or operating expenses of any position or to achieve any purpose which has been denied by any formal action of the Legislature." (Added by Stats. 1983, ch. 323, § 44, p. 970, urgency, eff. July 21, 1983.)

judgments of the respect and deference which the Constitution contemplates each branch of government will accord to final actions within the jurisdiction of a coequal branch, and would repose in the Legislature a combination of powers that the constitutional draftsmen specifically intended to forestall." (*Id.* at p. 549.)

In view of the committee's blatant readjudication of the plaintiff's final fee award, the Supreme Court concluded that the restriction precluding use of funds for a purpose expressly denied by the Legislature could not be applied and the operating expense appropriation was available to pay that award. (*Id.* at pp. 550-551.) The court also remarked: "If the Legislature had no legitimate reason for singling out this attorney fee award for disparate treatment, and arbitrarily withheld the benefits which the budget act affords to other similarly situated individuals, the appropriation restriction would, of course, violate elementary equal protection principles and for that reason alone would be invalid. (Citation.)" (*Id.* at p. 546.)

The Supreme Court, however, emphasized that its decision ". . . in no way deprives the Legislature of its broad authority to control the state's fiscal affairs or to adopt appropriate measures to limit governmental expenditures." (*Id.* at p. 550.) It suggested other mechanisms for constitutionally limiting expenditures for attorney fees: "With respect to the matter of attorney fees, for example, the Legislature has at its disposal a wide variety of legitimate means by which to restrict potential costs. Among other alternatives, the Legislature may if it chooses (1) establish a fixed or maximum hourly rate of recovery for attorney services (cf. Gov. Code, § 68093 (witness fees)), (2) prescribe a maximum 'per-case' limit on attorney fee awards (cf. Bus. & Prof. Code, § 10474, subds. (a), (b), (c) (dollar limitations on recovery from Real Estate Fund)), (3) limit the kinds of cases in which attorney fees may properly be awarded (cf. Code Civ. Proc., § 1021.5 (delineating criteria for recovery of attorney fees on private attorney general theory)) or (4) appropriate a designated sum of money to an 'attorney fee payment fund' and provide a reasonable basis for allocating such funds among eligible claimants should the designated sum prove insufficient to meet all fee awards. (Cf. Lab. Code, § 3716 (Uninsured Employers Fund).) Through such generally applicable statutory measures, the Legislature can fully protect the state's fiscal interest without either exceeding its constitutionally prescribed legislative function or drawing arbitrary, capricious and potentially invidious distinctions between similarly situated claimants." (*Id.* at pp. 550-551.)

■ In this case, the Controller argues that the restrictive $90 per hour provision of line-item appropriation 9810-001-001 meets the Supreme Court's guidelines. We agree.

■ As previously recognized, the Legislature cannot be compelled to appropriate money to pay any specific judgment. A fortiori, the Legislature

cannot be forced to appropriate more money when it decides to appropriate less money than necessary to satisfy a judgment in full. Furthermore, the Legislature can attach to its appropriations whatever terms and conditions it chooses so long as they are constitutionally permissible. (See *Mandel* v. *Myers, supra,* 29 Cal.3d at 551, fn. 9; cf. *State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 466 [343 P.2d 8]; *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, 270-285 [172 Cal.Rptr. 866, 625 P.2d 779]; *Committee to Defend Reproductive Rights* v. *Cory* (1982) 132 Cal.App.3d 852, 856 [183 Cal.Rptr. 475].) .

■ We fail to see how the restriction at issue here, that expenditures not exceed a maximum hourly rate of $90, invades the province of the judiciary. The original attorney fee award is unmodified. There is no evidence in the record before us that the Legislature actively reweighed the merits of this particular fee award as in *Mandel.* Neither has there been a legislative readjudication of the type disapproved in *Serrano* v. *Priest* (1982) 131 Cal.App.3d 188 [182 Cal.Rptr. 387].

In *Serrano, supra,* the State Controller repudiated a "private attorney general" fee award, which had become final in 1977, by refusing to draw a warrant against the available, unrestricted funds appropriated for the Department of Education's operating expenses and equipment. (*Id.* at pp. 191-193.) Plaintiffs successfully sought an order directing the State Controller to pay, but the state defendants appealed. (*Ibid.*) By the time of the appellate decision, the unencumbered balance of that appropriation was insufficient to satisfy the award. (*Id.* at p. 193.)

Restrictions added to the 1980 and 1981 Budget Acts prohibited the use of any funds for the payment of court-awarded attorney fees unless payment was specifically authorized by the Budget Act or expressly authorized by a statutory provision other than section 1021.5. (Stats. 1980, ch. 510, § 4.5, p. 1335; Stats. 1981, ch. 99, § 4.50, p. 372.) The reviewing court determined that the Legislature had in effect readjudicated that particular award by its action. (131 Cal.App.3d at pp. 198-201.) It stated: "Insofar as [the restrictive] sections act to exclude the instant award from the relevant appropriations, the provisions are invalid restrictions resting upon a legislative readjudication of the merits in this final court judgment." (*Id.* at p. 201.) However, the court stated: "We do not quarrel with the Legislature's right to make a statutory amendment which prospectively changes the standards for payment of this type of attorney's fee award. [Citation.]" (*Id.* at p. 200.)

By the time of the initial award in this case, the Legislature had established new standards for payment of attorney fee awards. The Budget Act of 1984, applicable to the fiscal year beginning July 1984 and ending June 30, 1985 (Stats. 1984, ch. 258, § 2.00, pp. 210, 246), contained a section stating that

no funds appropriated by the act could be used to pay court-awarded attorney fees unless payment was specifically authorized by the act or expressly authorized by a statute other than section 1021.5. (Stats. 1984, ch. 258, § 5.00, p. 650.) The line-item appropriation for payment of attorney fee claims made pursuant to section 1021.5 contained the restriction that "[e]xpenditures from this item shall not exceed an hourly rate which equals the rate charged by the Attorney General of the State of California at the time the warrant is issued or at the time judgment is entered, whichever is earlier." (Stats. 1984, ch. 258, § 2.00, p. 642.)[11] Thus, here payment from available, unrestricted funds was not improperly avoided as in *Serrano* v. *Priest, supra,* 131 Cal.App.3d 188.

The Legislature decided in its 1985 Budget Act that attorney fee awards made under section 1021.5 would be paid up to certain established limits and that is its prerogative. Since respondents' award came into existence after the establishment of the hourly rate restrictions upon expenditures, there is no problem of impermissible readjudication.

Consequently, the court's order violates separation of powers doctrine insofar as it directs the Controller to pay an amount in excess of those restrictions. Furthermore, no party has pointed to appropriations other than line-item 9810-001-001 of the 1985 Budget Act which are available for payment of respondents' fee award. Consequently, the trial court's order is in that respect overbroad.

It is up to respondents to decide whether to accept the payment on the terms or conditions offered by the Legislature or whether to refuse payment in hopes of a greater appropriation in the future.

### III

### Additional Attorney Fee Award

■ In addition, the State Controller contests the supplementary attorney's fee award of $500. He argues that the additional award should be set aside because respondents were not the successful parties within the meaning of section 1021.5, the order has no legal basis, and the court failed to make any findings. Respondents contend that award was proper since they have

---

[11]The same provisions were contained in Budget Act of 1983 (Stats. 1983, ch. 324, §§ 2.00, 5.00) and substantially the same provisions were contained in the Budget Act of 1985, except the hourly rate was set at $90 and the general limitation on use of funds for payment of court-awarded attorney's fees was made applicable to funds "appropriated under any other statute" as well. (Stats. 1985, ch. 111, §§ 2.00, 5.00). The appropriations in the 1986 budget for payment of attorney fee awards pursuant to section 1021.5 were eliminated by the Governor. (Stats. 1986, ch. 186.)

already been determined to be the successful parties withi n the meaning of section 1021.5 and no findings were requested.

In *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, our Supreme Court held that ". . . absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (*Id.* at p. 639.) The court affirmed the challenged fee award, but remanded the matter to the trial court to reconsider granting attorney fees for services rendered in moving for an award under section 1021.5. (*Id.* at p. 644.)

Since that decision, courts have consistently stated that parties entitled to attorney fees under section 1021.5 are also entitled to fees for services rendered in vindicating their claim on appeal. (See *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 236 [226 Cal.Rptr. 265]; *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 553 [207 Cal.Rptr. 705]; *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42, 55 [193 Cal.Rptr. 842].) However, no case states that parties obtaining attorney fee awards pursuant to section 1021.5 are also entitled to further attorney fees under that section for their efforts to collect a final fee award. We are unwilling to extend the holding of *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, in this respect in the absence of a clear statutory entitlement.

However, if their efforts to compel payment had independently resulted in the "enforcement of an important right affecting the public interest," respondents might have been entitled to an attorney fee award pursuant to section 1021.5. (See § 1021.5; cf. *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d 252, 285-286; *Committee to Defend Reproductive Rights* v. *Cory, supra,* 132 Cal.App.3d 852, 858-860.) Since no such result was obtained, respondents are not entitled to further fees.

The court's December 3, 1985, order is reversed. Each party to bear its own costs.

Agliano, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied March 18, 1987, and respondents' petition for review by the Supreme Court was denied June 3, 1987.