[Civ. No. 53393. First Dist., Div. Three. June 16, 1982.]

COMMITTEE TO DEFEND REPRODUCTIVE RIGHTS et al.,
Petitioners, v.
KENNETH CORY, as State Controller, et al., Respondents.

COUNSEL

Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz, Nancy L. Davis, Donna J. Hitchens, Judith E. Kurtz, Vilma Martinez, Carmen Estrada, Ralph Santiago Abascal, Pauline Tesler, Diamond, Bennington & Simborg, Joan Messing Graff and Fred Okrand for Petitioners.

Lawrence E. Gercovich, D. Robert Shuman, Richard H. Koppes, David F. Keast and Tod Beach for Respondents.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Jeffrey J. Fuller, Deputy Attorney General, as Amici Curiae.

## OPINION

**SCOTT, J.**—Petitioners are a coalition of organizations, health care providers, and taxpayers who represent the interests of indigent women throughout the state. Petitioners filed an original petition for writ of mandate with the California Supreme Court, seeking to compel respondents State Controller Kenneth Cory, State Treasurer Jesse M. Unruh, and Director of the State's Department of Health Beverlee A. Myers to refrain from enforcing those provisions of item 426-101-001 through item 426-101-890 of the Budget Act of 1981 which limit the funding of abortions sought by Medi-Cal recipients. Pursuant to that court's order, the proceeding was transferred to this court, and we have issued an alternative writ. The Supreme Court has also directed respondents to refrain from implementing the provisions at issue, pending determination of the petition for mandamus.

■ The abortion funding restrictions in the 1981 Budget Act are identical with those in the Budget Acts of 1979 and 1980 which the California Supreme Court has already declared invalid under the California Constitution.[1] (*Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779].) In that case, the Supreme Court acknowledged that the state has no constitutional obligation to provide medical services for the poor. However, once the state has decided to make such benefits available, it cannot selectively withdraw part of that care solely because a woman exercises her constitutional right to choose to have an abortion. (*Id.*, at p. 285.)

---

[1]As did the 1979 and 1980 Budget Acts, the 1981 act restricts abortion funding by specifying that none of the funds appropriated for Medi-Cal shall be used to pay for abortions except under any of the following circumstances:

"(a) Where the life of the mother would be endangered if the fetus were carried to full term.

"(b) Where the pregnancy is ectopic.

"(c) Where the pregnancy results from an act punishable under Section 261 of the Penal Code, and such act has been reported, within 60 days, to a law enforcement agency or a public health agency which has immediately reported it to a law enforcement agency, and the abortion occurs during the first trimester.

"(d) Where the pregnancy results from an act punishable under Section 261.5 of the Penal Code, and the female is under 18 years of age, and the abortion is performed no

We need not recapitulate the Supreme Court's lengthy analysis in that case. However, we note that the court focused on the purpose of the Medi-Cal program, which is to alleviate the hardship and suffering incurred by those who cannot afford needed medical care by enabling them to obtain such medical treatment. The court held that abortion funding restrictions would impede rather than enhance that purpose. (*Committee to Defend, supra*, 29 Cal.3d at p. 272.)

The court also emphasized the "fundamental and intimate nature" of a woman's constitutional rights to life and the preservation of her health, and of procreative choice, and the severe practical impairment of those rights which would result from the funding restrictions. (29 Cal.3d at pp. 274-275.) The utility of imposing the funding restrictions did not "manifestly outweigh" that impairment. (*Id.*, at p. 282.) The court rejected the argument that the restrictions would curtail state expenditures, and concluded that whatever money would be saved by refusing to fund abortions would be spent many times over paying maternity care and childbirth expenses. (*Id.*, at p. 277.) The court also pointed out that while the restrictions may have been intended in part to protect the potential life of the fetus, the state had made no effort to protect the potential life of *all* fetuses. Instead, the state had singled out poor women only, thereby impermissibly interfering with their constitutional right of procreative choice. (*Id.*, at pp. 278-281.)

Respondents Myers and Cory recognize the Supreme Court's decision in *Committee to Defend*, but state that the Budget Act of 1981 is a new

---

later than the first trimester, provided the female's parent or guardian or, if none, an adult of the female's choice is notified at least five days prior to the abortion by the physician who performs the abortion. Regulations governing the notice requirement shall be promulgated by the State Director of Health Services.

"(e) Where the pregnancy results from an act punishable under Section 285 of the Penal Code, and such act has been reported to a law enforcement agency or a public health agency which has immediately reported it to a law enforcement agency and the abortion occurs no later than during the second trimester.

"(f) Where it is determined by prenatal studies limited to amniocentesis, fetal blood sampling, fetal antiography, ultrasound, X-ray, or maternal blood examination that the mother is likely to give birth to a child with a major or severe genetic or congenital abnormality due to the presence of chromosonal abnormalities, neural tube defects, biochemical diseases, hemoglobinopathies, sex-linked diseases, and infectious processes.

"(g) Where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term, when so certified under penalty of perjury by two physicians, one of whom, where practicable, is a specialist in the affected medical discipline, and documentation thereof is provided with the claim for payment." (Stats. 1981, ch. 99, § 2, items 426-101-001 through 426-101-890, provision 27, pp. 414-415.)

enactment, and that they have no power to refuse to enforce such an enactment as unconstitutional unless an appellate court has determined that unconstitutionality. Respondent Myers also argues that *Committee to Defend* was wrongly decided. We are obligated to follow the decisions of our Supreme Court. Accordingly, the funding restrictions of the Budget Act of 1981 are unconstitutional according to the California Constitution. (*Committee to Defend, supra,* 29 Cal.3d at p. 285; *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

█ Respondent Myers concedes that if the restrictive language is declared unconstitutional, abortions must be financed out of the money allocated to the Medi-Cal program through the Budget Act of 1981. Respondent Cory expresses no position on this question. The Senate of the State of California, appearing as amicus curiae in this proceeding, is of a different view.

Amicus does not argue that the Budget Act restrictions at issue are constitutional. Instead, amicus urges that the Legislature did not intend to appropriate funds for Medi-Cal funded abortions except under a few circumstances, and that there are no funds appropriated for abortions except under those limited circumstances. Amicus argues that any order directing a state officer to ignore those restrictions would amount to a court-ordered appropriation, in violation of the constitutional separation of powers doctrine.

The separation of powers doctrine restricts a court from directly ordering the Legislature to enact a specific appropriation. However, that doctrine does not preclude the judiciary from ordering that funds which have been appropriated should be paid without regard to an invalid legislative restriction. "If, in the absence of such invalid restriction, appropriated funds are reasonably available for the expenditures in question, the separation of powers doctrine poses no barrier to a judicial order directing the payment of such funds." (*Mandel* v. *Myers* (1981) 29 Cal. 3d 531, 542 [174 Cal.Rptr. 841, 629 P.2d 935].)

In *Mandel,* the expenditure at issue was a payment to satisfy final judgment awarding attorney fees against various state agencies and officers. After the state did not voluntarily comply with the judgment, the trial court ordered the State Controller to pay the award out of the funds appropriated in the 1978-79 Budget Act for the operating ex-

penses of the Department of Health Services, the principal defendant in the underlying case.

The Supreme Court rejected the Attorney General's argument that the trial court's order violated constitutional separation of powers principles. The court looked to the terms of the Budget Act itself, and to past administrative practice, and concluded that the general operating expense appropriation was a category broad enough to encompass court-awarded attorney fees. The court recognized that the Legislature intended to deny payment of this award: a legislative committee had deleted from the act an express line-item appropriation for the fee, and the act itself provided that no appropriation made therein was to be used to achieve any purpose which had been denied by any formal action of the Legislature. Nevertheless, the question was whether such an exclusion of a particular award from the general appropriation provided in the agency operating expense budget was valid. The exclusion was unlawful, the court concluded, because it amounted to a legislative readjudication of the merits of a final court judgment, an impermissible usurpation of traditional judicial authority. (*Mandel, supra*, 29 Cal.3d at p. 552.)

Legislative intent to deny payment is apparent in this case, as well. However, as we have stated, our Supreme Court has already declared identical funding restrictions to be unconstitutional, and we repeat that amicus does not contend otherwise. Consequently, the only question remaining is whether funds already appropriated are generally available to pay for abortions obtained by Medi-Cal recipients. (*Mandel, supra*, 29 Cal.3d at p. 542.) When there is an unconstitutional restriction in an existing appropriation, it offends no constitutional principle to direct that the disputed payments be made from funds already appropriated for the same general purpose. (See *id.*, at p. 558 (dis. opn. of Richardson, J.).)

An appropriation need not specifically refer to the particular expenditure in question to be available for its payment. (*Mandel, supra*, 29 Cal.3d at pp. 543-544.) That portion of the Budget Act of 1981 which appropriates funds for health services to be provided under the Medi-Cal Act does not enumerate all the specific services for which payment is available. Instead, item 426-101-001 of that act appropriates $2,450,333,143 for "local assistance, Department of Health Services, Medical Assistance Program." Of that sum, $2,317,249,570 are allocated for the broad category of "Benefits (Medical Care and Services)."

(Stats. 1981, ch. 99, § 2, p. 407.) Funds so appropriated are deposited in the state's Health Care Deposit Fund. (Welf. & Inst. Code, § 14158.) Section 14157 of that code provides that all money in the Health Care Deposit Fund is "hereby appropriated for expenditure for the purposes specified" in the Medi-Cal Act (Welf. & Inst. Code, § 14000 et seq.) and in the Waxman-Duffy Prepaid Health Plan Act (Welf. & Inst. Code, § 14200 et seq.). The Medi-Cal Act expansively defines health care services. Among the services which it funds for eligible recipients are physician, hospital, and clinic outpatient services, surgical center services, and inpatient hospital services. (Welf. & Inst. Code, §§ 14053, 14132.) While certain reimbursable health services require a specific legislative appropriation, abortion is not such a service. (See Welf. & Inst. Code, § 14021, subd. (c) [mental health services].) It is apparent that an abortion performed by a physician, whether in a hospital clinic, or office, is a medical service which would be and which has been funded by the Medi-Cal program, absent the restrictive funding provisions. (See *Committee to Defend, supra,* 29 Cal.3d at p. 258.) The regulations of the Department of Health Services, which administers the Medi-Cal Act (see Welf. & Inst. Code, § 10721), reinforce our conclusion. Those regulations enumerate excluded services; abortion is not among them. (See Cal. Admin. Code, tit. 22, § 51301 et seq.) We also deem it significant that neither respondents nor amicus have argued that the funds already appropriated would be inadequate to pay for abortions once the restrictions are stricken. It is clear, then, that without the unconstitutional restrictions at issue, the funds appropriated by the Budget Act of 1981 for medical services provided by the Medi-Cal program are generally and reasonably available for payment for abortions for eligible recipients.

Petitoners are entitled to recover their costs in these proceedings, including reasonable attorneys' fees pursuant to Code of Civil Procedure section 1021.5.[2] (See *Committee to Defend Reproductive Rights, supra,* 29 Cal.3d at pp. 285-286.) In the Budget Acts of 1980 and 1981,

---

[2]Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefore."

the Legislature inserted sections prohibiting the use of funds appropriated in each bill for the payment of court-awarded attorneys' fees, unless payment is either (1) specifically authorized and provided for in an item or section of the Budget Act; or (2) expressly authorized by a statutory provision *other than Code of Civil Procedure section 1021.5* (Stats. 1980, ch. 510, § 4.5, p. 1335; Stats. 1981, ch. 99, § 4.50, p. 578, italics added). Nevertheless, section 1021.5 remains as explicit statutory authority for the "private attorney general" fee award in this case (see *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 930-931 [154 Cal.Rptr. 503, 593 P.2d 200]), and sections 4.5 and 4.50 of the Budget Acts cannot be read as an amendment by implication of Code of Civil Procedure section 1021.5 (Cal. Const., art. IV, § 9). We note also that the State Controller has recently urged that the Budget Acts' restrictive provisions do not preclude the Legislature from appropriating a fixed sum to satisfy judgments for attorneys' fees at the end of a fiscal year. (See *Serrano* v. *Priest* (1982) 131 Cal.App.3d 188, 200 [182 Cal.Rptr. 387].) We express no view as to whether petitioners will be able to collect such fees from the state. In recent years certain litigants who have been awarded attorneys' fees against the state have encountered considerable resistance when they have requested payment. (See, e.g., *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935]; *Serrano* v. *Priest, supra*, 131 Cal.App.3d 188.) In any event, we are called upon only to determine petitioners' entitlement to an award of reasonable attorneys' fees and need not anticipate collection problems which may or may not materialize.

Because this matter is before us on a petition for an original writ in the Supreme Court rather than an appeal, we are unable to remand the matter to the court in which the trial was held for the purpose of taking evidence on, and fixing, the amount of fees to be awarded. (*Mack* v. *Younger* (1980) 27 Cal.3d 687, 689 [165 Cal.Rptr. 876, 612 P.2d 966].) We could fix that amount ourselves on affidavits of the parties (see *Choudhry* v. *Free* (1976) 17 Cal.3d 660, 669 [131 Cal.Rptr. 654, 552 P.2d 438]) or appoint a referee to make the determination (see *Mack* v. *Younger, supra*, 27 Cal.3d at p. 689). According to petitioners, the cost award, including attorneys' fees, for the three cases underlying *Committee to Defend, supra*, 29 Cal.3d 252, is still pending before the San Francisco Superior Court. As this matter is closely related to those cases, we appoint the trial court judge before whom that cost award is pending as referee to take evidence and fix the amount of fees to be awarded in this case as well.

A peremptory writ shall issue, directing respondents to refrain from enforcing the unconstitutional restrictions in the Budget Act of 1981 challenged herein. Petitioners are entitled to recover their costs, including reasonable attorneys' fees pursuant to Code of Civil Procedure section 1021.5. The trial court judge before whom the cost award in *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779] is pending is appointed as referee to fix an appropriate cost award, including attorneys' fees.

White, P. J., and Feinberg, J., concurred.