[No. A048574. First Dist., Div. Two. Apr. 24, 1992.]

CALIFORNIA LABOR FEDERATION, AFL-CIO et al., Petitioners, v.
OCCUPATIONAL SAFETY AND HEALTH STANDARDS BOARD,
Respondent.

## COUNSEL

Altshuler & Berzon, Altshuler, Berzon, Nussbaum, Berzon & Rubin, Stephen P. Berzon, Michael Rubin, Robert C. Bell, Jr., Charles P. Scully II, Donald C. Carroll, Ralph Santiago Abascal, Albert H. Meyerhoff, David B. Roe and Laurence Gold for Petitioners.

Kronick, Moskovitz, Tiedemann & Girard, Charles A. Barrett, Janet K. Goldsmith, William E. Hvidsten, Steven H. Goldberg, James E. Thompson and Sherri M. Kirk for Respondent.

## OPINION

SMITH, J.—We are called upon here to determine the constitutionality of provisions of the state Budget Act which purport to limit the amounts the state will pay towards a certain category of attorney fee awards against state agencies. We conclude that the challenged provisions violate the single subject rule set forth in section 9 of article IV of the California Constitution, and are therefore void.

### I. BACKGROUND

Petitioners brought this original proceeding for a writ of mandate compelling respondent California Occupational Safety and Health Standards Board to incorporate in the California Occupational Health and Safety Act (Cal/OSHA) plan certain health and safety provisions adopted in Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986. We granted the relief requested. (*California Lab. Federation* v. *Occupational Safety & Health*

*Stds. Bd.* (1990) 221 Cal.App.3d 1547, 1559 [271 Cal.Rptr. 310], review den.) Thereafter, petitioners moved under Code of Civil Procedure section 1021.5 (hereinafter cited as section 1021.5) for an award of some $234,373.10 in attorney fees and costs. We awarded $114,266.25 in fees and $2,820.30 in costs, and directed respondent to pay these sums "forthwith."

When petitioners sought payment, a budget analyst for the Department of Industrial Relations advised counsel by letter that the state would not pay the full award: "The State of California has established a Budget Appropriation for payment of attorney's fees awarded pursuant to [section 1021.5] with a $125 cap on the hourly fee payable. The court's award of $114,226.25 [*sic*] was reduced to $55,422.75 in compliance with the hourly rate cap requirement for 1021.5 cases." In order to receive any payment at all, petitioners would have to execute releases discharging the state from any further liability.

 Petitioners brought this motion to enforce the award as made, seeking an order requiring respondent to pay the full amount awarded.[1] They contend that the budget provisions on which the state relies are void because they effect an amendment of existing law in violation of the single subject rule.

## II. ANALYSIS

### A. *Introduction*

The controversy before us is one of considerable delicacy, arising as it does in the sometimes turbulent region where the legislative and judicial spheres come into close contact. In making the present award, we did no more than carry out the legislative directive of section 1021.5 that we reward litigants in certain cases by granting a reasonable attorney fee. We are now

---

[1] In passing, respondent questions whether we have jurisdiction to determine the motion. A court issuing a writ of mandate has the inherent continuing power " 'to make any orders necessary and proper for the complete enforcement of the writ.' " (*King* v. *Woods* (1983) 144 Cal.App.3d 571, 578 [192 Cal.Rptr. 724]; *Professional Engineers in Cal. Government* v. *State Personnel Bd.* (1980) 114 Cal.App.3d 101, 109 [170 Cal.Rptr. 547]; see *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 205 [139 Cal.Rptr. 396]; *County of Inyo* v. *City of Los Angeles* (1976) 61 Cal.App.3d 91, 95 [132 Cal.Rptr. 167].) The court has the distinct power to award "damages and costs," and the award "may be enforced in the manner provided for money judgments generally." (Code Civ. Proc., § 1095; see Cal. Civil Writ Practice (Cont.Ed.Bar 2d ed. 1987), § 11.6, p. 455.) We have the further power "[t]o compel obedience to [our] judgments . . . ." (Code Civ. Proc., § 128, subd. (a)(4).) In the absence of prescribed procedures for doing so, "any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code," i.e., the Code of Civil Procedure. (*Id.*, § 187.) We discern no basis for doubting our jurisdiction.

called upon to consider the effect of budget provisions by which the Legislature sought to restrict the right thus granted. In addressing this question we must consider the paramount command of the California Constitution that the Legislature may not use the Budget Act to expressly or impliedly amend or repeal existing substantive statutes.

This case raises no question concerning the Legislature's substantive power to limit or control attorney fee awards against the state. In *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 550-551 [174 Cal.Rptr. 841, 629 P.2d 935], the Supreme Court pointed out several means by which the Legislature might accomplish such a result through properly enacted statutes. One of the strategies noted is similar in substance to the provisions in question here, i.e., "establish[ing] a fixed or maximum hourly rate of recovery for attorney services. . . ." (*Id.* at p. 551.) There is no occasion here to question the Legislature's competence to enact such a limitation. The sole issue is the lawfulness, in light of the single subject rule, of a "cap" on fee awards *enacted as part of the Budget Act.*

## B. *Single Subject Rule*

■ Article IV, section 9 of the California Constitution (hereafter article IV, section 9) requires that every statute "embrace but one subject, which shall be expressed in its title."[2] This requirement grew out of an abhorrence of "log-rolling," "pork barrel politics," and legislation by "riders"—all variations on the parliamentary tactic of combining unrelated provisions in a single bill in order to secure their enactment. A "rider," for example, " 'consisted in attaching to a bill dealing with one matter of legislation a clause entirely foreign to that subject matter, to the end that, hidden under the cloak of the meritorious legislation, the obnoxious measure might "ride through." Such "riders" . . . not infrequently embraced ill-digested and pernicious legislation, relief bills, private appropriation measures, and the like, which would not have carried if the legislative mind had been directed to them. It was to cure this evil that the constitution made it mandatory that a bill should embrace but one subject-matter, and to meet the case of such a "rider" actually slipping through, declared that any matter foreign to the title of the bill should be held void.' " (*Planned Parenthood Affiliates* v. *Swoap* (1985) 173 Cal.App.3d 1187, 1196 [219 Cal.Rptr. 664](hereinafter cited as *Swoap*), quoting *Ex parte Hallawell* (1909) 155 Cal. 112, 114 [99 P. 490].)

---

[2]"A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void. A statute may not be amended by reference to its title. A section of a statute may not be amended unless the section is re-enacted as amended." (Art. IV, § 9.)

■ The Budget Act is a complex measure whose passage is essential, and as such is "particularly susceptible to abuse" of the kind just described. (*Swoap, supra,* 173 Cal.App.3d at p. 1198.) It is, therefore, fully subject to scrutiny under the single subject rule. (*Id.* at pp. 1198-1199.) Its "subject" is the appropriation of funds for government operations, and it cannot constitutionally be employed to expand a state agency's authority, or to "substantively amend[] and chang[e] existing statute law." (*Id.* at p. 1199, quoting *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150], quoting 64 Ops.Cal.Atty.Gen. 910, 917 (1981); internal quotation marks omitted.) Whether it effects an amendment of existing law for purposes of this prohibition "is determined not by title alone, or by declarations in the new act that it purports to amend existing law. On the contrary, it is determined by an examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, even though in its wording it does not purport to amend the language of the prior act." (*Ibid.,* quoting *Franchise Tax Bd.* v. *Cory* (1978) 80 Cal.App.3d 772, 777 [145 Cal.Rptr. 819], quoting *Balian Ice Cream* v. *Arden Farms Co.* (S.D.Cal. 1950) 94 F.Supp. 796, 798-799, italics and internal quotation marks omitted.)

## C. *Budget Act Provisions*

We are called upon here to apply the principles of article IV, section 9 to provisions of the Budget Act[3] purporting to limit the payment of fee awards under section 1021.5. Section 5 of the Budget Act provides that no award may be paid except as "[s]pecifically authorized and set forth in an item or section of this act."[4] Item 9810-001-001 purports to (1) place a cap of $125

---

[3]In all pertinent respects, the Budget Acts of 1990 and 1991 are identical, and we therefore refer to them without distinction as the "Budget Act."

[4]Section 5.00 provides as follows: "(a) No funds appropriated by this act or appropriated under any other statute may be used to pay attorney's fees in actions arising in state courts unless payment of the fees is:

"(1) Specifically authorized and set forth in an item or section of this act;

"(2) Expressly authorized by a statutory provision other than Section 1021.5 of the Code of Civil Procedure; or

"(3) Awarded by a federal court pursuant to federal law expressly authorizing attorney's fees.

"(b) This section shall not be construed as making an appropriation of funds for the payment of court-awarded attorney's fees." (Stats. 1991, ch. 118, § 5.00, No. 4 West's Cal. Legis. Service, p. 1124; Stats. 1990, ch. 467, § 5.00, No. 9 West's Cal. Legis. Service, pp. 2272-2273.)

per hour on fee award payments, and (2) condition payment on acceptance of this amount "in full and final satisfaction" of the fee claim.[5]

The question before us is whether these provisions are "amendatory" for purposes of the rule that the Budget Act may not be utilized to amend existing statutory law. Despite the fact that some such restrictions have been included in the Budget Act for at least 10 years, no published decision has yet faced the issue whether the restrictions survive scrutiny under the single subject rule. In *Swoap, supra,* we ourselves declined to reach the issue, characterizing it as a problem of enforcement not then before us. (173 Cal.App.3d 1187, 1202, fn. 12, citing *Committee to Defend Reproductive Rights v. Cory* (1982) 132 Cal.App.3d 852, 859 [145 Cal.Rptr. 819].) Other courts have not reached the issue because they determined that the awards before them fell outside the terms of the budget restrictions. (E.g., *Green v. Obledo* (1984) 161 Cal.App.3d 678 [207 Cal.Rptr. 830], cert. den. (1985) 474 U.S. 819 [88 L.Ed.2d 54, 106 S.Ct. 67] [award based on federal law]; *Coalition for Economic Survival v. Deukmejian* (1985) 171 Cal.App.3d 954 [217 Cal.Rptr. 621][same]; see *Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023 [204 Cal.Rptr. 913].) And one court held the restrictions ineffective as against an award made before their

---

[5]Item 9810-001-001 provides: "For payment of specified attorney's fee claims, settlements, compromises, and judgments arising from actions in state courts against the state, its officers, and officers and employees of state agencies, departments, boards, bureaus, or commissions, supported by the General Fund . . 1,445,000.
"Schedule:
"(a) Payment of Specified Attorney's Fees . . . . . 1,505,000.
"(b) Trigger reduction . . . . . . . . . . . . -60,000
"Provisions:
"1. Expenditures from this item shall be made by the Controller, subject to the approval of the Department of Finance, and shall be charged to the fiscal year in which the disbursement is issued.
"2. Payments from this item shall only be made for state court actions filed pursuant to Section 1021.5 of the Code of Civil Procedure, the 'private attorney general' doctrine, or the 'substantial benefit' doctrine. Payments for state court actions shall not exceed the maximum hourly rate specified in Budget Act Item 9810-001-001 that was in effect on the date the judgment is entered or the date of the settlement agreement for attorney's fees. In no event shall the rate exceed $125 per hour.
"3. No payment shall be made by the Controller from this item except in full and final satisfaction of the claim, settlement, compromise, or judgment for attorney's fees incurred in connection with a single action. `
"4. The Director of Finance shall notify the Chairperson of the Joint Legislative Budget Committee and the chairperson of the fiscal committees in each house when funds from this item have been exhausted, or when there are insufficient funds to satisfy a claim completely. This report shall list the known unsatisfied claims, and the amount of each of these claims." (Stats. 1991, ch. 118, No. 4 West's Cal. Legis. Service, pp. 1115-1116; see Stats. 1990, ch. 467, No. 9 West's Cal. Legis. Service, pp. 2262-2263.)

adoption, finding them to constitute an impermissible legislative readjudication of a final judgment. (*Serrano* v. *Priest* (1982) 131 Cal.App.3d 188, 200-201 [182 Cal.Rptr. 387].)

In *Estate of Cirone* (1987) 189 Cal.App.3d 1280 [234 Cal.Rptr. 749], review denied, similar budget restrictions were upheld as against a contention that they violated the separation of powers. However, the decision nowhere acknowledged, let alone decided, the possible applicability of the single subject rule. ■ "[I]t is axiomatic that 'cases are not authority for propositions not considered therein.' " (*Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 73 [145 Cal.Rptr. 368, 577 P.2d 188], cert. den. 439 U.S. 996 [58 L.Ed.2d 669, 99 S.Ct. 597], quoting *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 472 [283 P.2d 19].) Since *Cirone* is addressed solely to the question of separation of powers, its authority as precedent is limited to its holding on that question, and it has no bearing on the issue before us. (See *Worthley* v. *Worthley, supra,* 44 Cal.2d at p. 472.)

### D. *Amendatory Enactment*

To determine whether the budget restrictions effect an impermissible amendment, we must examine existing law concerning fee awards of the kind made here. ■ Section 1021.5 permits a prevailing party to recover attorney fees where certain criteria are met and the action "has resulted in the enforcement of an important right affecting the public interest . . . ."[6] This is a "codification of the 'private attorney general' attorney fee doctrine that had been developed in numerous prior judicial decisions." (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)[7] Its enactment "in significant measure . . . was an explicit reaction" to *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612], in which the United States

---

[6]"Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor." (§ 1021.5)

[7]These "prior judicial decisions" were mostly federal. California case law did not confirm the availability of a private attorney general theory until scant days after section 1021.5 was signed into law (but several months before it took effect), when the Supreme Court held that courts possessed inherent equitable power to award fees on such a theory, at least where the action vindicated a public policy with a constitutional basis. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 46-47 [569 P.2d 1303]; see *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 925.)

Supreme Court held that federal courts could not award fees on a private attorney general theory without statutory authorization. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 934.) Section 1021.5 is "a legislative declaration that, in California, courts do enjoy the authority—exercised in numerous pre-*Alyeska* federal decisions—to award attorney fees on a private attorney general theory." (23 Cal.3d at p. 934.)

Section 1021.5 contains no express limitation on the size of the award, but has been universally understood to permit a "reasonable" award in light of factors derived from the statute's history and purpose. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 635, 639 [652 P.2d 985]; see *Sokolow* v. *County of San Mateo* (1989) 213 Cal.App.3d 231, 249, 250 [261 Cal.Rptr. 520], review den.; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 232-233, 236 [226 Cal.Rptr. 265].) The Budget Act provisions in question here, on the other hand, impose what the state itself refers to as a "cap" on the hourly rate which will be paid. Coupled with the requirement that the recipient waive any amounts exceeding this "cap," the provisions impose what amounts to a mandatory numerical ceiling on the fees which may be recovered.[8]

In *Swoap, supra,* 173 Cal.App.3d 1187, we held invalid a budget provision purporting to withhold family planning funds from organizations which promoted abortion services. (173 Cal. App.3d at p. 1191, fn. 1.) We compared this restriction to existing statutes providing for family planning education, training, and services, and to regulations, promulgated under those statutes, requiring that clients be advised of all possible family planning options. (*Id.* at p. 1200.) We concluded that the budget restriction was impermissibly amendatory, for even if it did not flatly contradict the family planning statutes it sought to "clarify" them, and to "impose[] substantive conditions that nowhere appear in existing law." (*Id.* at p. 1201.)

As noted, section 1021.5 contains an implicit "cap" of its own, i.e., a party may only recover a "reasonable" fee, and no more. (See *Serrano* v. *Unruh, supra,* 32 Cal.3d 621, 635.) The budget restrictions purport to impose a

---

[8]Quoting from *Estate of Cirone, supra,* respondent suggests that the cap is really something less than that because the fee recipient need not accept the reduced sum: "It is up to [the recipient] to decide whether to accept the payment on the terms or conditions offered by the Legislature or whether to refuse payment in hopes of a greater appropriation in the future." (189 Cal.App.3d at p. 1292.) We fail to see how the ability to "hope" for full payment dispels the mandatory character of the invitation. On the contrary, a person relegated to a mere "hope" experiences the essence of legal powerlessness. Insofar as the budget provisions here may be viewed as having that effect, they conflict with section 1021.5, which grants a *right* to a reasonable fee as fixed by a court.

wholly different cap based on a flat maximum hourly rate. This appears to be a markedly different substantive measure, and one which will in many cases be irreconcilable with the grant of a "reasonable" fee.

Respondent contends, however, that the existing limitation to a reasonable fee is not "statutory" but a mere judicial *interpretation* of section 1021.5; therefore, respondent asserts, the budget provisions do not affect "existing *statutory* law." We question the implicit premise that the distinction between statutory and court-made law plays the crucial role respondent would give it.[9] However, we need not thoroughly explore that premise because we find the existing limitation to a "reasonable" award to be as much a matter of "statutory law" as anything explicitly stated in section 1021.5. " '[W]hatever is necessarily implied in a statute is as much part of it as that which is expressed.' " (*Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214], quoting *Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].) The limitation to a reasonable fee is so inherent and essential to section 1021.5 that it must be considered "necessarily implied." The statute limits fee awards to a "reasonable" sum as surely as if it said so. The budget provisions purporting to impose a different limitation seek to effect an outright alteration of section 1021.5 as drawn.

Furthermore, as we stated in *Swoap*, a Budget Act provision is impermissibly amendatory not only if it alters existing statutory law but also if "its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law." (*Swoap, supra,* 173 Cal.App.3d 1187, 1199, citations and internal quotation marks omitted.) If section 1021.5 is viewed as ambiguous with respect to the amount of fees allowed, the provisions here are amendatory for purporting to supersede the judicial resolution of that ambiguity with a legislative "clarification" set forth as an appropriation. The challenged provisions are amendatory in that sense and in the sense that they impose "substantive conditions that nowhere appear in existing law." (173 Cal.App.3d at p. 1201, fn. omitted.)[10]

We reiterate that the Legislature is presumptively free to limit attorney fee awards under section 1021.5. What the Legislature may *not* do is grant a

---

[9] The apparent reason for striking down "amendatory" budget provisions is that they have a *substantive* effect, whereas the sole "subject" of the Budget Act is the enactment of *fiscal* policy. The rationale, again, is that such proposals should be separately presented and considered, in order to attract the distinct attention of the legislative mind. For these purposes any amendment of existing law, other than fiscal law, would seem to be a "substantive" enactment.

[10] In *Committee to Defend Reproductive Rights* v. *Cory, supra,* 132 Cal.App.3d 852, the court remarked in passing that similar budget restrictions "cannot be read as an amendment by implication of Code of Civil Procedure section 1021.5." (132 Cal.App.3d at p. 859.) This statement was followed immediately by a citation to article IV, section 9—the Constitution's

substantive right to fees, as it has done in section 1021.5, and then retract or impair the right thus granted through amendments masquerading as Budget Act provisions.[11] To hold otherwise would deny the people the legislative accountability they sought to secure by adopting article IV, section 9 of the state Constitution. The provisions under scrutiny violate the single subject rule and are void.

## III. RELIEF

Respondent seems to contend that whether or not the budget provisions are void, this court cannot direct payment of the full award because to do so would infringe legislative prerogatives and transgress the separation of powers. While we recognize the delicacy of the problem presented, we are satisfied that we can grant the relief requested by petitioners without impermissibly invading the domain of the Legislature.

■ "[T]he separation of powers doctrine has generally been viewed as prohibiting a court from directly ordering the Legislature to enact a specific appropriation, [but] it is equally well established that once funds have already been appropriated by legislative action, a court transgresses no constitutional principle when it orders the State Controller or other similar official to make appropriate expenditures from such funds." (*Mandel* v. *Myers, supra,* 29 Cal.3d 531, 540.) Here, funds have been appropriated for the payment of attorney fee awards under section 1021.5, but payment has been made subject to certain conditions which, as we have held, are void. The funds in question "have already been appropriated by legislative action"

---

single subject rule. (132 Cal. App.3d 859) We do not understand the quoted remark to mean that the budget restrictions could not be understood as amendatory, but rather that they could not be *permitted* to have that effect consistent with the single subject rule. In short, the court anticipated our holding today, without actually reaching the issue.

[11]Although we do not reach the issue, we note that the Budget Act restrictions may also be amendatory of existing statutes concerning cost awards against the State. For some purposes, at least, a fee award under section 1021.5 is an item of "costs." (See Code Civ. Proc., § 1033.5, subd. (a)(10)(B) [fees awarded pursuant to statute are costs]; *T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 62 [112 Cal.Rptr. 910][same]; *Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 220 [134 Cal.Rptr. 332][marshalling cases]; *Committee to Defend Reproductive Rights* v. *Cory, supra,* 132 Cal.App.3d 852, 858 [petitioners were "entitled to recover . . . costs . . . , including reasonable attorneys' fees . . . ."] (fn. omitted); *Swoap, supra,* 173 Cal.App.3d 1187, 1202 [same]; Gov. Code, § 800 [authorizing fee award in certain cases "in addition to . . . other costs"].) At least in general, cost awards "must be paid out of the appropriation for the support of the agency on whose behalf the State appeared." (Code Civ. Proc., § 1028; compare *id.,* § 1095 [losing public entity in mandate proceedings must pay costs "as other claims against the public entity are paid," and a cost award "may be enforced in the manner provided for money judgments generally"]; see Gov. Code, § 965.2 ["The Controller shall draw a warrant for the payment of any final judgment or settlement against the state whenever the Director of Finance certifies that a sufficient appropriation for the payment of such judgment or settlement exists."].)

for the very purpose here contemplated. Accordingly, we transgress no constitutional principle by directing payment of the award without regard to the impermissible restrictions.

In accord with petitioners' request, we "order *respondent* to comply fully with this court's Order . . . by paying forthwith the amount of $117,086.55." (Italics added.) We retain jurisdiction (1) to enforce this order as may be necessary, (2) to determine whether a further award of attorney fees can and should be allowed, and if so in what amount, in connection with work performed by petitioners' counsel in seeking to enforce the original award, and (3) to consider such other matters as may be necessary and proper..

Kline, P. J., and Peterson, J., concurred.

A petition for a rehearing was denied May 21, 1992.