165 Cal.App.4th 857 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
CHANH PHOMPHAKDY, Defendant and Appellant.
No. C056881.
Court of Appeals of California, Third District.
July 31, 2008.
*859 Joseph Shipp, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McLean and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ROBIE, J.
In this case we decide whether the Medical Marijuana Program Act enacted in 2003 (Health & Saf. Code,[1] § 11362.7 et seq.) unconstitutionally amends the Compassionate Use Act of 1996 (§ 11362.5). The *860 Compassionate Use Act relieves a defendant of criminal liability for certain marijuana-related offenses if the defendant possesses or cultivates marijuana for his "personal medical purposes . . . upon . . . approval of a physician." (§ 11362.5, subd. (d).) The Medical Marijuana Program Act limits the amount of marijuana a qualified patient can possess to "no more than eight ounces of dried marijuana" and "no more than six mature or 12 immature marijuana plants" if there is no doctor's recommendation that these quantities are insufficient to meet the patient's needs. (§ 11362.77, subds. (a), (b).)
We hold that the Medical Marijuana Program Act's numerical limits are an unconstitutional amendment to the Compassionate Use Act.[2] Finding application of the unconstitutional amendment prejudicial here, we reverse the judgment against defendant Chanh Phomphakdy, whom a jury found guilty of two counts of misdemeanor possession of marijuana.

FACTUAL AND PROCEDURAL BACKGROUND

A

Overview of the Case
Defendant was charged with cultivating marijuana and possessing that same marijuana for sale. He offered a medical marijuana defense. Over objection by both parties, the court instructed the jury pursuant to both the Compassionate Use Act and the Medical Marijuana Program Act.
The jury acquitted defendant of the charged crimes and instead found him guilty of two counts of misdemeanor possession of marijuana. The court suspended imposition of sentence and placed him on probation for three years.

B

The Prosecution
Around noon on October 24, 2006, police officers searched the house in which defendant was living. When they entered the converted garage that *861 served as defendant's bedroom, they smelled a very strong odor of marijuana.[3] Inside the closet they found a large stalk of marijuana hanging to dry that weighed 1.8 pounds, a number of baggies containing a total of three pounds of marijuana, and two plastic containers and a glass jar containing a total of 2.2 pounds of marijuana. In a cabinet, officers found four baggies containing a total of three-quarters of a pound of marijuana, and cardboard trays or boxes containing a total of one pound of marijuana.
When officers searched the yard, they found four marijuana plants five to six feet high planted in the ground. On the fence, they found one marijuana plant hanging to dry that weighed one pound. On an overturned bucket, they found a cardboard tray containing marijuana.
When officers searched the living/family room, they found a medical marijuana recommendation for defendant taped to the wall.
Officers did not find any pay-owe sheets, scales, large amounts of money, cell phones, pagers, police scanners, or firearms. They also did not find any pipes or "bongs."
An officer who qualified as an expert witness was of the opinion that the marijuana found here was possessed for sale.

C

The Defense
Hany Assad is a doctor licensed to practice in California who is "board certified" in internal medicine. In Dr. Assad's opinion, marijuana can be used as medicine. Defendant came into Dr. Assad's office twiceonce in May 2005 and once in July 2006. Dr. Assad wrote medical marijuana recommendations for defendant on both occasions based on defendant's complaints of and/or Dr. Assad's observations of defendant's back pain, insomnia, stress, and anxiety. Dr. Assad's recommendations did not state how much marijuana defendant should ingest, because Dr. Assad feared violating federal laws if he made recommendations as to an amount.
Christopher Conrad is an expert on marijuana. He has written two books about cannabis and a booklet about medical marijuana. In his opinion, it is extremely common for users of medical marijuana to keep supplies of marijuana on hand. This is because dispensaries routinely are being shut *862 down all around the state, leaving patients with nowhere to go except the "black market," which can be "unreliable, dangerous, [and] expensive." It is also common for users of medical marijuana to store marijuana in multiple bags to keep track of the different varieties of marijuana that come from different plants and to more easily carry and handle it for themselves. Marijuana can be stored for five years without losing a significant amount of its potency. Marijuana can be ingested either by smoking it or eating it. When marijuana is eaten, a patient needs to consume between three to five times as much as when it is smoked.
According to a study by the National Institute on Drug Abuse, a typical marijuana plant of about six feet produces about four ounces of "finished bud." It is "extremely difficult" to anticipate the yield from a marijuana plant because it is hard to tell how much a plant will grow and how pests or disease might affect the plant.
The total useable amount herecalculated by Conrad to be approximately nine and one-half poundswas enough for a one-year supply or less if the marijuana was eaten or a three-year supply if smoked. In Conrad's opinion, the amount here could be used by an individual patient or shared among patients: it was a large supply for an individual patient or a relatively small supply if it was going to be shared among patients.

D

Instructions Given
The court instructed the jury on defendant's medical marijuana defense in part as follows: "The Compassionate Use Act allows a person to possess or cultivate marijuana for personal medical purposes or as the primary caregiver of a patient with a medical need when a physician has recommended or approved such use. The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs. A qualified patient may possess no more than eight ounces of dried marijuana and may also maintain no more than six mature or twelve immature marijuana plants."

DISCUSSION
Defendant contends his convictions for simple possession of marijuana must be reversed because the Medical Marijuana Program Act unconstitutionally amends the Compassionate Use Act by adding numerical limitations not found in the Compassionate Use Act. He further contends that given the court's instructions, the prosecutor's closing argument, and the evidence *863 presented, the unconstitutional amendment prejudiced him. As we will explain, we agree with both contentions.

I

The Medical Marijuana Program Act Unconstitutionally Amends the Compassionate Use Act
In November 1996, voters in California approved Proposition 215, the Compassionate Use Act. (People v. Urziceanu (2005) 132 Cal.App.4th 747, 767 [33 Cal.Rptr.3d 859].) "Its purpose is `[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes' upon the recommendation of a physician." (People v. Tilehkooh (2003) 113 Cal.App.4th 1433, 1436 [7 Cal.Rptr.3d 226].) To this end, the Compassionate Use Act states that "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)
In 2003, seven years after voters approved the Compassionate Use Act, the Legislature enacted the Medical Marijuana Program Act. (People v. Wright (2006) 40 Cal.4th 81, 93 [51 Cal.Rptr.3d 80, 146 P.3d 531].) "In the Medical Marijuana Program Act, the Legislature sought to: `(1) Clarify the scope of the application of the [Compassionate Use Act] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers. [¶] (2) Promote uniform and consistent application of the [Compassionate Use Act] among the counties within the state. [¶] (3) Enhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects.'" (People v. Urziceanu, supra, 132 Cal.App.4th at p. 783, quoting Stats. 2003, ch. 875, § 1, subd. (b).) The Legislature also intended "`to address additional issues that were not included within the [Compassionate Use Act], and that must be resolved in order to promote the fair and orderly implementation of the act.'" (Urziceanu, at p. 783, quoting Stats. 2003, ch. 875, § 1, subd. (c).)
To promote the Legislature's intent, the Medical Marijuana Program Act directed the state Department of Health Services to establish and maintain a voluntary program for the issuance of "identification cards" to "qualified patients." (§§ 11362.7, subd. (b), 11362.71, subd. (a)(1).) A "qualified patient" is "a person who is entitled to the protections of [the Compassionate Use Act], but who does not have an identification card issued pursuant to this article." (§ 11362.7, subd. (f).) The primary benefit of possessing a valid *864 identification card is that the holder is not "subject to arrest for possession, transportation, delivery, or cultivation of medical marijuana in an amount established pursuant to [the Medical Marijuana Program Act]." (§ 11362.71, subd. (e).)
The Medical Marijuana Program Act establishes the following numerical limitations for possession of marijuana: "A qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana per qualified patient. In addition, a qualified patient or primary caregiver may also maintain no more than six mature or 12 immature marijuana plants per qualified patient." (§ 11362.77, subd. (a).) These limitations apply to both "[a] qualified patient or a person holding a valid identification card, or the designated primary caregiver of that qualified patient or person." (§ 11362.77, subd. (f).) These numerical limitations do not apply "[i]f a qualified patient or primary caregiver has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs." (§ 11362.77, subd. (b).) In that case, "the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs." (§ 11362.77, subd. (b).)
Because these numerical limitations are not found in the Compassionate Use Act, defendant contends that the Medical Marijuana Program Act unconstitutionally amends the Compassionate Use Act. To address this contention, we turn to the rules regarding amendment to an initiative and the definition of an amendment.
(1) "A statute enacted by voter initiative may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval." (People v. Cooper (2002) 27 Cal.4th 38, 44 [115 Cal.Rptr.2d 219, 37 P.3d 403], citing Cal. Const., art. II, § 10, subd. (c).) Here, the Compassionate Use Act does not authorize the Legislature to amend its provisions without voter approval, so we look at whether the Medical Marijuana Program Act amends the Compassionate Use Act.
"An amendment is `. . . any change of the scope or effect of an existing statute . . . .'" (Franchise Tax Bd. v. Cory (1978) 80 Cal.App.3d 772, 776 [145 Cal.Rptr. 819], quoting Sutherland, Statutory Construction (4th ed. 1972) § 22.01, p. 105.) "A statute which adds to or takes away from an existing statute is considered an amendment." (Franchise Tax Bd., at p. 776, citing Robbins v. O. R. R. Co. (1867) 32 Cal. 472.) "`Whether an act is amendatory. . . is determined by an examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, . . . the act is amendatory, even though in its wording it does not purport to amend the language of the prior act.'" (Franchise Tax Bd., at p. 777.)
*865 We therefore compare the provisions of the Compassionate Use Act to the provisions of the Medical Marijuana Program Act to determine if the latter amends the former. The Compassionate Use Act does not place numerical limits on the amount of marijuana that a patient or a patient's primary caregiver can possess or cultivate. It simply states that the laws penalizing possession and cultivation of marijuana shall not apply to a patient or a patient's primary caregiver if either possesses or cultivates marijuana "for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d), italics added.) The Medical Marijuana Program Act adds numerical limits to the Compassionate Use Act. Specifically, it limits the amount of dried marijuana that a qualified patient or a primary caregiver can possess to "no more than eight ounces . . . per qualified patient" and the number of plants either can maintain to "no more than six mature or 12 immature marijuana plants per qualified patient." (§ 11362.77, subd. (a).) It lifts these limits "[i]f a qualified patient or primary caregiver has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs," in which case "the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs." (§ 11362.77, subd. (b).)
The People argue that despite the quantitative difference between the Medical Marijuana Program Act and the Compassionate Use Act, "[t]here is no substantive difference between" them. According to the People, the numerical limits in the Medical Marijuana Program Act "do no more than implement a plan to provide the safe distribution of medical marijuana to those who need it as specifically authorized by the [Compassionate Use Act]." At the same time though, the People admit that the Medical Marijuana Program Act "both expanded and clarified the scope of the [Compassionate Use Act]."
This latter admission, with which we agree, dooms the People's argument. Two cases illustrate this point. In Planned Parenthood Affiliates v. Swoap (1985) 173 Cal.App.3d 1187 [219 Cal.Rptr. 664], the Court of Appeal invalidated a budget act provision restricting the use of family planning funds for organizations providing abortion-related services. (Id. at p. 1201.) As is pertinent here, the court compared that provision to existing statutes providing for family planning education, training, and services, and to regulations requiring that clients be advised of all possible family planning options. (Id. at pp. 1199-1200.) The court explained that even if the budget act "`simply clarifie[d]'" funding arrangements and other services authorized under the family planning act, it still impermissibly amended the act because "[a]t the very least" it "impose[d] substantive conditions that nowhere appear in existing law." (Id. at pp. 1200-1201.)
*866 Relying on Planned Parenthood, the court in California Lab. Federation v. Occupational Safety & Health Stds. Bd. (1992) 5 Cal.App.4th 985 [7 Cal.Rptr.2d 399], invalidated a budget act provision that imposed a "`cap'" on the hourly rate to be paid for attorney fees under the "`"private attorney general" attorney fee doctrine'" because the provision was an impermissible amendment of that doctrine. (California Lab. Federation, at pp. 993-996.) The "`"private attorney general" attorney fee doctrine'" itself contained "no express limitation on the size of the award" although it had been "universally understood to permit a `reasonable' award." (Id. at pp. 993-994.) The budget act provision at issue, however, imposed "what amounts to a mandatory numerical ceiling on the fees which may be recovered." (Id. at p. 994.)
(2) Similarly here, the Medical Marijuana Program Act imposes mandatory numerical ceilings on the amount of dried marijuana and the number of marijuana plants that can be possessed or cultivated, where the Compassionate Use Act has none. The Compassionate Use Act speaks simply in terms of the "personal medical purposes of the patient . . . ." (§ 11362.5, subd. (d).) At most, this language can be understood to impose only a reasonableness requirement, i.e., "that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs." (People v. Trippet (1997) 56 Cal.App.4th 1532, 1549 [66 Cal.Rptr.2d 559]; see also CALJIC No. 12.24.1; Com. to CALJIC No. 12.24.1 (Fall 2006 ed.) pp. 790-791.) But "[w]hat precisely are the `patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact." (Trippet, at p. 1549.) Here, by placing numerical limits on what constitutes the "patient's current medical needs," or the "personal medical purposes of the patient . . ." where no such limits are found in the Compassionate Use Act, the challenged provision of the Medical Marijuana Act is amendatory. We therefore hold that the provision in the Medical Marijuana Program Act imposing numerical limits on the amount of dried marijuana that can be possessed and the number of marijuana plants that can maintained (§ 11362.77, subd. (a)) is an unconstitutional amendment to the Compassionate Use Act. This provision can be severed without affecting the validity of the remaining portions of the Medical Marijuana Program Act. (§ 11362.82.)

II

Application of the Unconstitutional Provision in the Medical Marijuana Program Act Prejudiced Defendant
(3) Given our holding that section 11362.77, subdivision (a) in the Medical Marijuana Program Act unconstitutionally amends the Compassionate Use Act, we must assess the effect of applying the unconstitutional provision here. *867 Defendant contends he was prejudiced given the court's instructions, the prosecutor's argument, and the evidence presented. We agree.[4]
Defendant was charged with cultivating marijuana and possessing that same marijuana for sale. The jury acquitted him of those charges and instead found him guilty of two counts of simple possession of marijuana.
Over objection by both parties to omit the numerical limits in the Medical Marijuana Program Act from the instruction on the defense of medical marijuana, the court instructed as follows: "Possession or cultivation of marijuana is not unlawful if authorized by the Compassionate Use Act. The Compassionate Use Act allows a person to possess or cultivate marijuana for personal medical purposes or as the primary caregiver of a patient with a medical need when a physician has recommended or approved such use. The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs. A qualified patient may possess no more than eight ounces of dried marijuana and may also maintain no more than six mature or twelve immature marijuana plants. If a qualified patient has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs, the qualified patient may possess an amount of marijuana consistent with the patient's needs." Following the instruction, the prosecutor argued that there was a "presumptive limit of eight ounces and six plants, unless there's a recommendation for more. In this case there's no recommendation for more."
While the instruction was arguably correct in that possession must be "reasonably related" to defendant's current medical needs (see People v. Trippet, supra, 56 Cal.App.4th at p. 1549), it was incorrect because it limited the amount that defendant could possess to "eight ounces of dried marijuana and . . . no more than six mature or twelve immature marijuana plants." As we have explained in part I of this Discussion, these limits on the Compassionate Use Act are unconstitutional.
(4) A court's misinstruction on one element of a defense is akin to a court's misinstruction on one element of an offense. Where the court misinstructs on one element of an offense, the beyond-a-reasonable-doubt harmless error standard of Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824] applies. (People v. Flood (1998) 18 Cal.4th 470, *868 502-503 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Under this standard, the error is harmless only if we can declare "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (Chapman, at p. 24 [17 L.Ed.2d at p. 710].)
Here, we cannot say beyond a reasonable doubt that had the jury not been instructed on the numerical limits in the Medical Marijuana Program Act, the jury still would have rejected defendant's medical marijuana defense. There was evidence from which the jury could have found defendant fell within the Compassionate Use Act's guidelines that allowed him to possess or cultivate marijuana "for . . . personal medical purposes." Only three months before the search that uncovered the marijuana, Dr. Assad had given defendant a medical marijuana recommendation for back pain, insomnia, stress, and anxiety that was silent on the amount of marijuana that defendant should consume. To provide evidence on medical marijuana and marijuana consumption, the defense offered the testimony of expert witness Christopher Conrad. Conrad explained that the amount of marijuana found here was a year's supply or less if eaten instead of smoked;[5] medical marijuana patients commonly keep supplies of marijuana on hand to avoid having to purchase it from the "black market," which can be unreliable, dangerous, and expensive; and marijuana can be stored for long periods without losing a significant amount of its potency. Despite the large amount of marijuana possessed here, the jury rejected the People's expert testimony that the marijuana was possessed for sale and apparently believed Conrad's testimony at least to some degree, as it accepted that the amounts here could be consistent with personal use. Given the jury's rejection of the crux of the People's case and apparent acceptance of at least some of Conrad's testimony as to personal use, we cannot say the jury would have also rejected Conrad's testimony as it related to defendant's medical marijuana defense if the numerical limits had been omitted from the instructions.
Given this record, we cannot say that the unconstitutional application of the Medical Marijuana Program Act here was harmless beyond a reasonable doubt. Defendant's convictions must therefore be reversed. If defendant is retried, he can be retried for only one count of marijuana possession because the two counts were based on simultaneous possession. (See People v. Schroeder (1968) 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491].)
Given our conclusion, we do not address defendant's remaining claims.

*869 DISPOSITION
The judgment is reversed.
Morrison, Acting P. J., and Cantil-Sakauye, J., concurred.
NOTES
[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.
[2] Our analysis of the unconstitutionality of part of the Medical Marijuana Program Act agrees with a recently filed opinion on the same subject by the Second Appellate District, Division Three. (People v. Kelly (2008) 163 Cal.App.4th 124 [77 Cal.Rptr.3d 390].)
[3] The officers could not say whether anyone had been smoking marijuana. The mere presence of marijuana could have created the smell.
[4] The People make no attempt to show that application of the unconstitutional portion of the Medical Marijuana Program Act was harmless.
[5] There was no evidence the marijuana here was being smoked.